STATE of South Dakota, Plaintiff and Appellee,

v.

Ronald CROSS, Defendant and Appellant.

No. 15108.

Supreme Court of South Dakota.

Considered on Briefs April 22, 1986.

Decided June 25, 1986.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, Mark V. Meierhenry, Atty. Gen., on brief, Pierre, for plaintiff and appellee.

George E. Grassby, Pennington Co. Public Defender's Office, Rapid City, for defendant and appellant.

SABERS, Justice.

Defendant appeals his conviction for third degree burglary and simple assault. We affirm.

### Statement of Facts

On February 9, 1985, Terry Bonnet (Bonnet), a guest at the Hilton Hotel in Rapid City, South Dakota, looked down from his eighth floor window and observed two individuals rummaging around a white Porsche automobile. The Porsche was parked across the street from the hotel and adjacent to a parking lot which contained an unhooded, late model Monte Carlo. Bonnet saw two individuals transporting articles from the Porsche to the Monte Carlo. One of them then remained in the Monte Carlo and the other returned to the Porsche and then appeared to hot wire it because the lights and wipers came on and off.

Meanwhile, the Porsche's owner, Charles Brown (Brown), looked out of his business office window which was located on the ground floor of the Hilton, and observed the lights on in his car. Concerned, Brown proceeded across the street and upon finding the individual in his car, told him to get out. A struggle ensued until a police car drove up, at which point the individual Brown was wrestling broke loose by slipping out of his coat and running away. Although Bonnet observed this entire scenario from his room at the Hilton, he was unable to identify any of the three people he had seen.

At this time and while on duty, Rapid City Police Officer Clifford Peterson (Peterson), was called by the officer to the vicinity of the Hilton Hotel. The officer asked Peterson to be on the lookout for a suspect who had just been in a fight. Peterson, who had received a description of the suspect, drove around the block and then stopped a person who fit the description. This person wore blue jeans, a black tee shirt over a red shirt, was bleeding from the face, and had blood on his hands. At the Preliminary Hearing and at trial, Peterson identified him as the appellant, Ronald Cross (Cross).

After picking up Cross as a suspect, Peterson brought him back to where the Porsche was parked. Brown identified Cross as the person he had wrestled with some ten minutes earlier. Brown was also shown a bag which was found in the Monte Carlo and he identified it as being his property. Cross was subsequently charged with Third Degree Burglary and Simple Assault, which are violations of SDCL

§§ 22–32–8 and 22–18–1(5), respectively. He denied any culpability.

The damage to Brown's Porsche was estimated at between two and three hundred dollars. About a month before the trial, Cross went to Brown's office and offered to make restitution for the damage done to his car. Cross claimed that this offer was an attempt to settle the matter civilly and that he was in no way admitting guilt for the incident.

The Preliminary Hearing was held on April 16, 1985. Prior to testifying, Officer Peterson looked at some pictures of Cross. Peterson testified that he reviewed these photographs to "double check" his memory and be absolutely certain of his identification of Cross.

At the trial held on June 12 and 13, 1985, State sought to introduce evidence of Cross' prior conviction for third degree burglary which was entered on July 9, 1976. Over defense counsel's objection, the trial court ruled that the State could ask Cross, for impeachment purposes, whether he had ever been convicted of a felony. However, the court prohibited any inquiry into the specifics of the conviction.

### Defendant's Claims

On appeal, Cross argues that admission of his prior felony conviction was erroneous and that Peterson's in-court identification was based upon an impermissible pretrial identification by photograph.

1. *Admissibility of Prior Conviction*

Cross contends that admission of his prior felony conviction unduly prejudiced his case. He further claims that the trial court's failure to consider his "certificate of discharge" from the State penitentiary as a bar to the use of his prior conviction constituted an abuse of discretion.

■ For the purpose of attacking credibility, a trial court has the power to admit evidence of prior convictions so long as the probative value of this evidence outweighs its prejudicial effect on the accused. SDCL 19–14–12.* Before allowing prior convictions into evidence, the court must make a definite finding that the prior convictions are more probative than prejudicial. *State v. Cochrun*, 328 N.W.2d 271, 274 (S.D. 1983); *State v. Quinn*, 286 N.W.2d 320, 323 (S.D.1979). The balancing process set forth in SDCL 19–12–3 as applied to rulings under SDCL 19–14–12, is within the trial court's sound discretion. *Cochrun*, 328 N.W.2d at 274. Our standard of review is whether the trial court abused its discretion. *Id.*

■ In this case, Cross attempted to use a certificate of discharge to bar admission of his prior felony conviction. The trial court initially ruled against the State and denied the introduction of this evidence. However, the trial court reversed its own ruling and expressed its reasoning as follows:

... I was having my Law Clerk do research on this certificate of rehabilitation and ... he has found some very significant case law and other treatises on the area ... One is Federal Rules of Evidence ... It discusses Rule 609(c) ... then it goes on to say, 'For a conviction to be inadmissible under Rule 609(c), the procedure, whatever called, must have made a finding of rehabilitation of the person convicted. A pardon or its equivalent granted solely for the purpose of restoring civil rights lost by virtue of the conviction is not equivalent to a finding of rehabilitation, nor is an expungement where the state law under which granted provides that the prior conviction may be proved in any subsequent prosecution of the defendant. Accordingly, neither a

---

* SDCL 19–14–12 provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or the accused and the crime
> (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or
> (2) involved dishonesty or false statement, regardless of the punishment.

certification showing a sentence has been satisfactorily served, nor a pardon not based upon a finding of innocence, nor parole successfully completed, ... is sufficient alone to bar use of the conviction for purposes of impeachment.' ... And then I am also looking at the Weinstein's Evidence ..., 'The burden rests on counsel proposing to use the pardoned witness to show that his prior conviction may not be used to impeach him.'

The evidence shows that Cross' certificate of discharge did nothing more than restore his civil rights upon release from prison, and that he sought to use it without further supporting evidence. In finding that Cross' certificate of discharge was not synonymous with a certificate of rehabilitation, the trial court stated:

So with that information I now have, it is my conclusion that the certificate of discharge mentioned in the statute under Title 24 is not equivalent to a certificate of rehabilitation because it is not a finding of innocence or a finding in accordance with what I just read, it merely restores to an inmate what has been taken from him while he is in the penitentiary, his rights as a citizen to vote and so forth, and it is not in effect an expungement or equivalent annulment or pardon for the purposes of excluding it under Rule 609(c).

█ Cross next asserts that the trial court failed to consider the guidelines enunciated in *Gordon v. United States,* 383 F.2d 936 (D.C.Cir.1967) and *Luck v. United States,* 348 F.2d 763 (D.C.Cir.1965), before it ruled to admit Cross' prior conviction, especially where he took the stand in his own defense. SDCL 19–14–12 is patterned after Rule 609(a) of the Federal Rules of Evidence. In construing Rule 609(a), courts have considered the *Gordon-Luck* factors in their analysis of whether to allow prior convictions into evidence for impeachment purposes. *See: United States v. Palumbo,* 401 F.2d 270 (2d Cir.1968), *cert. denied,* 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969); *United States v. Puco,* 453 F.2d 539 (2d Cir.1971), *cert. denied,* 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1973); *United States v. DeAngelis,* 490 F.2d 1004 (2d Cir.1974), *cert denied,* 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 306 (1974).

We are not persuaded that the trial court failed to consider the *Gordon-Luck* criteria, to-wit: the nature of the prior crime; its similarity to the crime charged; the time of conviction and Cross' subsequent history, criminal or otherwise; the importance of Cross' testimony; and the centrality of the credibility issue. *Gordon,* 383 F.2d at 940–941; *Luck,* 348 F.2d at 769. On the contrary, the record indicates that the trial court considered resolution of the credibility issue central to this case. "[T]he reason for exposing the defendant's prior record is to attack his *character,* to call into question his reliability for truthtelling ... [.]" *Brown v. United States,* 370 F.2d 242, 244 (D.C.Cir.1966) (emphasis in original). Similar to the crime charged, Cross' prior conviction involved third degree burglary which is conduct that often reflects adversely on a man's honesty, integrity, and thus, credibility. *See: Gordon,* 383 F.2d at 940.

However, the *Gordon* court warned that a special problem arises when the prior conviction is for the same conduct for which the accused is on trial. *Id.* "As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment ... [.]" *Id.* Here, the trial court only allowed the State to inquire as to whether Cross had ever been convicted of a felony. In accordance with *Gordon,* it did not permit the State to delve into the specifics of Cross' prior conviction.

The *Luck* decision vests the trial court with broad discretion in determining whether to admit prior convictions evidence for impeachment purposes. *Luck,* 348 F.2d at 769. "The experienced trial judge has a sensitivity in this regard which normally can be relied upon to strike a reasonable balance between the interests of the defendant and the public." *See also: Gordon,* 383 F.2d at 941.

In ruling on Cross' motion to suppress, the trial court stated:

> ... credibility is clearly an issue in this case, it comes down to a question of who is telling the truth. I think that the prior felony conviction of the defendant is pertinent to that inquiry and I think that the probative value of that felony conviction outweighs any prejudicial value it may have. And for that reason, I am going to permit the State to inquire as within the limits as I explained yesterday; that is, whether or not he has been convicted of a felony, and I am not satisfied that the defendant has received a certificate of rehabilitation.

In *Quinn, supra,* we cautioned trial courts that "[s]ome degree of rationale on the 'weighing' must be shown in the record." 328 N.W.2d at 274. "However, as long as there is some consideration of the matter and an indication, on the record, that some weighing of factors occurred, no abuse of discretion will be found." *State v. King,* 346 N.W.2d 750, 752 (S.D.1984). In this case, the trial court determined that Cross' prior felony conviction was crucial to the credibility issue, and that its probative value outweighed any prejudicial effect. The trial court knew its duty and was engaged in a balancing process based on that duty. *See: King,* 346 N.W.2d at 752. We find no abuse of discretion.

### 2. *Identification*

 Cross argues that Officer Peterson's conduct prior to testifying at the Preliminary Hearing was "illegal." Cross relies on a series of post-indictment "line-up" decisions concerning lay witness identification. His reliance is misplaced, however, because Cross was not denied his due process rights by way of any suggestive lineup. On the contrary, Peterson readily identified Cross at trial as the man he stopped and helped arrest on February 9, 1985. Peterson was able to describe the difference in Cross' appearance; the peculiarity about his dress at the time of apprehension, i.e., a tee shirt over another shirt in winter weather; and that he was bleeding. Peterson's testimony was independently corroborated by Brown, who also made an in-court identification of Cross.

Cross takes issue with the fact that Peterson reviewed some photographs prior to the Preliminary Hearing. Peterson testified that he did this to "double check" his memory and to be absolutely certain that he could identify Cross. Considering that the Preliminary Hearing was conducted some two months after the arrest, and the number of people a police officer is exposed to on a daily basis, we are satisfied with the propriety of Peterson's conduct. It was simply a matter of good police work for him to refresh his memory with the arrest report and any other relevant material, including photographs, prior to testifying at the Preliminary Hearing.

Accordingly, we affirm the trial court in all respects.

All the Justices concur.