STATE of South Dakota, Plaintiff and Appellee,

v.

Harold Ray HILL, Defendant and Appellant.

No. 16912.

Supreme Court of South Dakota.

Argued Sept. 18, 1990.

Decided Nov. 28, 1990.

Diane Best, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Jeff Larson, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUE

On March 30, 1989, an Indictment was filed charging Harold Ray Hill (Hill) with two counts of aggravated assault in violation of SDCL 22–18–1.1(2) and SDCL 22–18–1.1(5). Hill was arraigned on April 14, 1989.

Hill filed a "Motion for Expert" on April 14, 1989. Based upon this Motion, an Order was entered authorizing the expenditure of funds for an expert to testify on behalf of the defense, but the expert was precluded from testifying as to certain factors affecting lineup identification.

On August 23–25, 1989, a jury trial was held. On August 25, 1989, the jury returned a verdict of "guilty" on both counts. Hill was subsequently sentenced to 15 years in the South Dakota State Penitentiary. On appeal, Hill presents one salient issue: The trial court erred in restricting the defense expert from testifying about the factors affecting lineup identification.

We affirm.

## FACTS

During the late evening hours of March 10, 1989, Alice Brown (Brown) and two of her friends, Kelly McClung (McClung) and Cheryl Rise (Rise) celebrated Brown's thirtieth birthday at Opie's, a Sioux Falls nightclub.

While at Opie's, the three women had a brief, but not unpleasant, encounter with a man later identified as Hill, who was dancing in close proximity to the women's table.

As the three women were leaving the bar, they saw Hill in Opie's parking lot. They recognized Hill because he was the same man who had been dancing near their table earlier in the evening. After a brief conversation in the parking lot, all of the parties left, apparently to go to their respective homes.

When Brown arrived at her apartment, she got out of her pickup truck. Suddenly, Hill appeared, grabbed Brown and forced her back into the pickup. As she struggled, Brown managed to get out of the pickup. Hill grabbed Brown again and cut her in the face and hand with his knife. Fighting for her liberty, Brown broke free and ran into her apartment, calling the police.

When the police arrived, Brown identified her attacker as the same man she encountered in the parking lot at Opie's. Brown also gave a physical description of her attacker to the police.

On March 15, 1989, Brown provided her physical description information to a police artist so that he could make a composite drawing. Brown then gave the composite drawing to Rise. Rise took the drawing to Opie's, hoping that someone would recognize the man and provide a name to match the drawing. Tom Gunlicks, the owner of Opie's, commented that the sketch looked like Hill.

Later, Brown was shown a photo lineup and asked to identify her assailant. Brown identified Hill as her assailant. Subsequently, Hill was arrested and brought to trial. We now address his one evidentiary issue.

## DECISION

*The trial court did not err in restricting the defense expert's testimony about certain psychological factors affecting the credibility of a lineup identification.*

Hill claims that the trial court erred when it refused to allow his defense expert to testify regarding certain psychological factors which would affect the credibility of a lineup identification.[1]

The admissibility of expert testimony is governed by SDCL 19–15–2 (Rule 702). That rule states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

 We have long acknowledged that the trial court has broad discretion concerning the admission of expert testimony. *State v. Bachman*, 446 N.W.2d 271 (S.D. 1989); *United States v. Purham*, 725 F.2d 450 (8th Cir.1984). The trial court's decision on such matters will not be reversed absent a clear showing of an abuse of discretion. *State v. Logue*, 372 N.W.2d 151 (S.D.1985).

Although this Court has not discussed the admissibility of expert psychological testimony on the unreliability of eyewitness identification previously, other appellate jurisdictions have. The leading opinion on this topic is the 1973 decision in *United States v. Amaral*, 488 F.2d 1148 (9th Cir.1973). In *Amaral*, the Ninth Circuit Court of Appeals declined to reverse Amaral's conviction for bank robbery, finding no abuse of discretion by the trial judge. Amaral contended that the trial court erroneously excluded the expert testimony of a psychologist on the effect of stress concerning perception and, more generally, the unreliability of eyewitness identification. In its analysis, the Amaral court set out four criteria which should be applied in order to determine the admissibility of such testimony.[2] These are: (1) the use of a qualified expert; (2) conformity to a generally accepted explanatory theory; (3) the proper subject matter; and (4) probative value compared to prejudicial ef-

---

1. Hill asserts the offer of proof that was rejected by the trial court consisted of three facts: (1) that all lineup members should have similar clothing and grooming characteristics; (2) that no suggestion should be made to a witness as to whether or not "the suspect" is in a particular group because that suggests to the witness that she is to pick the closest one; and (3) that an

ideal lineup is a sequential, one-at-a-time lineup where the witness does not know how many subjects will be presented.

2. The first two requirements are not at issue in the present case. Thus, they will not be addressed.

fect of the testimony. *Amaral*, 488 F.2d at 1153; *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983); *Purham*, 725 F.2d at 454.

■ First, in order for psychological evidence to be admissible, the offered evidence must be of a proper subject matter for expert testimony. This court has interpreted the "proper subject" requirement in two ways: (1) the subject of the expert's testimony must lie beyond the knowledge and experience of the average layperson; *State v. Swallow*, 350 N.W.2d 606 (S.D. 1984); *Bachman*, 446 N.W.2d at 271 and (2) the expert must not invade the province of the jury. *Bachman*, 446 N.W.2d at 277.

■ Under the first interpretation, as stated in *Swallow*, we explained that the determining factor in admitting expert testimony is if it would assist the jury in understanding matters that normally would not lie within a layman's breadth of knowledge. In general, this test is a "common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject ..." Fed.R.Evid. 702 Advisory Committee Note (*quoting* Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952). In the case before us, even though it is safe to say that jury members have some experience and common sense knowledge of factors that may cause occasional mistakes in identification, they do not possess the expert's comprehensive training in assessing the reliability of identification. However, to be a proper subject of expert testimony, the testimony must present the jury with a system of analysis that the court, in its discretion, can find reasonably likely to aid in a common understanding of the issue before the court. *United States v. Fosher*, 590 F.2d 381 (1st Cir.1979).

■ Having said as much, we are of the opinion that the jury was not deprived of the benefit of scientific research on eyewitness testimony. The defense expert indeed presented extensive testimony concerning the variables which affect identifi-

cation and memory. This expert was not totally shut off from testifying about procedures in identification. Hence, the jury was fully able to assess the reliability of the identification procedure. Further testimony would not aid the jurors' understanding of the issue presented.

■ We have also analyzed the "proper subject matter" requirement in a different light—the expert must not invade the province of the jury. In South Dakota, expert testimony is not admissible if it includes the expression of opinion regarding ultimate issues. *State v. Logue*, 372 N.W.2d 151 (S.D.1985). According to *Logue* decision, the expert testimony merely relates to another witness' credibility—a determination supposedly left to the trier of fact. Admission of such type of testimony violates a policy against expression of opinions by witnesses on the "ultimate issue" before the jury. In the present case, defense expert's proposed testimony, *see* footnote 1, would have embraced the ultimate fact at issue, by substituting the expert's position on photo lineups for a jury determination on the identification issue. This type of testimony does not respect the jury's role as trier of fact. The final determination of the weight that the identification deserves should remain in the jury's hands.

Under *Logue*, we hold that the trial court did not clearly abuse its discretion, when it excluded certain testimony proposed by the defense.·

■ The remaining criterion at issue involves the balancing of the offered testimony's probative value against its prejudicial effects. A trial court is given additional discretion to consider the balance of prejudice and probative value. *Logue, supra.* In *Logue*, we stated:

We share the concerns of the Court in *United States v. Amaral*, 488 F.2d 1148 (9th Cir.1973), however, that within the context of a criminal trial, 'scientific or expert testimony, particularly courts the [danger of undue prejudice or of confusing the issues or misleading the jury] because of its aura of special reliability, and trustworthiness.

Consequently, we hold that any small aid the expert testimony might have provided would be outweighed by the unfair prejudice which might have resulted because of the aura of reliability and trustworthiness surrounding scientific evidence. *Purham, supra.*

Accordingly, the judgment of the trial court is affirmed.

MILLER, C.J., and WUEST and MORGAN, JJ., concur.

SABERS, J., concurs in result.

SABERS, Justice (concurring in result).

I concur in result, but write specially to point out that reliance in this case on *State v. Bachman* is highly questionable. In my view and the view of Justice Henderson, *Bachman* was bad law. The present case holds expert testimony *was not* permissible and I agree. The majority in *Bachman* held that expert testimony *was* permissible and Justice Henderson and I disagreed. The only constant is that the rule is interpreted against the position of the accused on both occasions. I think we are overruling *Bachman* without saying so.