**STATE of Iowa, Appellee,**

v.

**Gary Dean BROWN, Appellant.**

**No. 89–1254.**

Supreme Court of Iowa.

May 15, 1991.

Linda Del Gallo, State Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Bonnie J. Campbell, Attorney General, Sheryl A. Soich, Asst. Atty. Gen., John P. Sarcone, County Attorney, and Nan M. Horvat, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, NEUMAN, and SNELL, JJ.

LARSON, Justice.

Gary Dean Brown was convicted of first-degree murder, Iowa Code §§ 707.1 and 707.2 (1989), and second-degree theft, Iowa Code §§ 714.1(1) and 714.2(2). The convictions were based in part on scientific evidence of DNA "fingerprinting" which linked Brown to seminal fluid found in the body of the victim. Brown contends that the reliability of this procedure was not sufficiently established and that evidence of the mathematical probability of Brown's

being the source of the specimen was improperly admitted. He also challenges the introduction of a statement made by him during police interrogation. We reject these arguments and affirm the convictions.

## I. *Admissibility of the Scientific Evidence.*

■ DNA is a shorthand term for deoxyribonucleic acid. DNA is an organic substance found in the chromosomes in the nucleus of a cell that provides the genetic code which determines a person's characteristics. Much of the DNA make-up of humans is identical and it is this type of identity of DNA that makes humans look like humans rather than dogs or trees. *People v. Castro,* 144 Misc.2d 956, 960–62, 545 N.Y.S.2d 985, 988 (1989). This genetic code is passed from one generation to the next so that reproduction results in an offspring which follows the species of the parent rather than another. *Caldwell v. State,* 260 Ga. 278, 393 S.E.2d 436, 438 (1990).

Every person, other than an identical twin, has a unique configuration of DNA in every cell that contains a nucleus. This includes all cells in humans, except red blood cells, which contain no nucleus. Every cell containing a nucleus has the same configuration of DNA. Thus, for comparative purposes, DNA can be obtained from almost any of the cells of the body, and the configuration will be the same. DNA cells, moreover, do not change during a person's lifetime.

It is the uniqueness of a person's DNA, like that of his fingerprints, which makes it a valuable tool in identification of body substances. DNA "fingerprinting" is a process in forensic science through which a person's DNA configuration is matched with DNA retrieved from the scene of a crime, such as the seminal fluid in the present case.

In this case, four "fragments" of Brown's known DNA samples were matched with four fragments of the crime scene DNA. The probability of an individual possessing the particular genetic pattern for those four segments were, respectively, one in 25,094; one in 441; one in sixty; and one in 194. When these figures are combined, the likelihood of a person matching in all four fragments, according to the State's expert, would be one in several billion.

In *State v. Klindt,* 389 N.W.2d 670, 672 (Iowa 1986), we approved the use of "forensic serology" evidence to establish the identity of a dismembered torso which was believed to be the murdered wife of the defendant. Forensic serology, we explained,

> is an identification process involving analysis of the genetic makeup of blood and tissues. In this process, the sample to be identified is analyzed for the presence of several specific enzymes, called phenoltypes or "genetic markers."

*Id.* at 671.

In *Klindt,* the likelihood of finding the specific markers found in the unidentified torso was approximately twenty-seven out of 10,000. Analysis of the markers of the torso with blood samples taken from the parents of the suspected victim revealed that the suspected victim's parents were 107.8 times more likely than a random couple to have produced an offspring with the genetic markers found in the torso. The implication, of course, was that the torso belonged to the defendant's wife. *Id.* at 671–72. We held that the statistical-probability evidence based upon the serology tests was admissible under rules of evidence 702 and 703. *Id.* at 673–74.

While the forensic serology of *Klindt* was not the same scientific procedure used here, there are some similarities. Both involved analysis and comparison of body substances, both were highly technical, and they both depended on mathematical probabilities.

*Klindt,* however, is also distinguishable. As Brown points out, the mathematical probability of identity was not nearly as great in *Klindt.* Also, in *Klindt,* the test was not used to identify a defendant but rather a victim. With a mathematical probability as strong as it is in the present case,

Brown claims, it virtually amounts to an opinion that Brown is guilty.

The rules regarding introduction of scientific evidence are well established. Iowa Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Iowa Rule of Evidence 703 provides this with respect to the data base used to determine mathematical probability in this type of case:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the trial or hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Our general rule, even predating evidence rule 702, is that expert testimony is admissible if it will assist the trier of fact in resolving an issue. The evidence will be admitted, however, only if it is shown to be reliable "because unreliable evidence cannot assist a trier of fact." *Klindt*, 389 N.W.2d at 672; *see also State v. Murphy,* 451 N.W.2d 154, 156–57 (Iowa 1990).

In *State v. Hall*, 297 N.W.2d 80 (Iowa 1980), we rejected the *Frye* standard of "general scientific acceptance" for admission of scientific evidence, adopting instead a requirement only that the evidence be established as reliable and meets the general test for admission of expert testimony. *Id.* at 83–86 (referring to *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923)).

The trial court is vested with broad discretion in ruling on the admissibility of expert testimony. *Murphy*, 451 N.W.2d at 157; *Klindt*, 389 N.W.2d at 672. We will reverse only if we find the court abused its discretion and the defendant suffered prejudice. *State v. Myers*, 382 N.W.2d 91, 93

(Iowa 1986); *State v. Taylor*, 336 N.W.2d 721, 726 (Iowa 1983).

DNA fingerprinting has been held to be admissible in the great majority of appellate courts which have considered it. *See, e.g., Perry v. State*, 567 So.2d 1373, —— (Ala.Crim.App.1990); *State v. Pennell*, 584 A.2d 513, 519 (Del.Super.1989); *Andrews v. State*, 533 So.2d 841, 850 (Fla.App.1988), *review denied*, 542 So.2d 1332 (Fla.1989); *Caldwell v. State*, 260 Ga. 278, ——, 393 S.E.2d 436, 441 (1990); *State v. Smith*, 248 Kan. 217, ——, 807 P.2d 144, 159 (1991); *Cobey v. State*, 80 Md.App. 31, ——, 559 A.2d 391, 398, *cert. denied*, 317 Md. 542, 565 A.2d 670 (1989); *People v. Wesley*, 140 Misc.2d 306, 331–32, 533 N.Y.S.2d 643, 659 (Co.Ct.1988); *State v. Pennington*, 327 N.C. 89, 100–101, 393 S.E.2d 847, 854 (1990); *State v. Blair*, 1990 WL 212664 at 11–13 (1990) (unpublished); *State v. Ford*, 392 S.E.2d 781, 784 (S.C.1990); *Mandujano v. State*, 799 S.W.2d 318, 322 (Tex.App. 1990); *Spencer v. Commonwealth*, 238 Va. 275, 289–291, 384 S.E.2d 775, 783 (1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 759, 107 L.Ed.2d 775 (1990). *But see State v. Schwartz*, 447 N.W.2d 422, 428 (Minn.1989) (DNA evidence inadmissible because laboratory failed to comply with appropriate standards and controls); *State v. Woodall*, 385 S.E.2d 253, 260 (W.Va.1989) (DNA test results not admitted because inconclusive). *See generally United States v. Two Bulls*, 918 F.2d 56, 58–61 (8th Cir.1990) (discussing controversy over admission of DNA evidence in general).

In this case, the State introduced evidence of the reliability of the procedure as well as the mathematical computations. Brown produced expert evidence which questioned both the reliability of DNA fingerprinting and the State's evidence of mathematical certainty. The jury was free to compare the expert testimony and make its own judgment as to the weight to be given to the respective experts.

We conclude that the procedure here was shown to be sufficiently reliable to be admissible and meets the general test for admission of expert testimony. The trial court was therefore within its discre-

tion in allowing evidence of the DNA testing. Another issue is raised, however, regarding the DNA testing: whether it was error to permit the State's expert to testify as to the mathematical probability in view of its lopsided odds.

Brown contends that statistical probabilities could have been determined by the jury without the assistance of an expert. However, the test for admission of expert testimony is not whether the jury might be able to arrive at the same conclusion but whether the evidence in question will assist the jury. *See* Iowa R.Evid. 702. In the present case, it is doubtful that jurors could take the probabilities of the four separate segments, combine them, and arrive at an answer with any degree of certainty as to its correctness. Furnishing statistical analysis would assist the trier of fact in such a case and that is the heart of admissibility under rule 702. Without statistical evidence, the ultimate results of DNA testing would become a matter of speculation.

■ Brown's argument that the statistical evidence should be excluded because it, in effect, removes the issue of guilt from the jury, is without merit. As one court noted, adoption of an argument such as Brown's

> will exclude statistical probability testimony where it is the most cogent, and allow it in evidence only where there remains a degree of doubt because of the inconclusiveness of the numbers. Where both are based on the same scientific methods and facts, this makes little logical sense. Indeed, it might lead to the exclusion of fingerprint evidence, which also is based on the mathematical theory of probabilities that the chance of two individuals bearing the same fingerprint (or prints) is so infinitesimally small as to be negligible.

*Martinez v. State*, 549 So.2d 694, 697 (Fla. 1989). Statistical evidence does not remove the issue of identity from the jury, which is free to disregard or disbelieve expert testimony.

We conclude that introduction of the statistical evidence was not an abuse of discre-

tion. And, contrary to Brown's argument, it does not affect admissibility of the evidence that it is used to identify a crime perpetrator rather than a crime victim.

## II. *Preservation of Issue for Postconviction Relief.*

■ Brown contends that, since his trial, new evidence became available casting doubt on DNA identification techniques. After a hearing on Brown's motion for a new trial in which he raised that issue, the district court overruled his motion because none of the evidence in question was available at the time. Brown argues that this issue should be preserved because, under Iowa Code section 663A.2(4), it is evidence "not previously presented and heard."

The State does not challenge Brown's argument that, if this is a viable issue, it should be presented through postconviction proceedings, and we agree.

## III. *The Defendant's Comment During Interrogation.*

■ Brown contends the court abused its discretion by admitting evidence of a comment made by Brown to a police detective who was examining Brown, after his *Miranda* warnings. According to the officer's testimony, Brown was asked about how he felt a jury would react to what he was saying. Brown said he didn't "give a fuck what the jury thought." Brown argues that this remark was irrelevant to any issue in the case and served only to create an unfavorable impression in the eyes of the jury.

He argues that the prejudicial effect of the evidence outweighed its probative value. *See* Iowa R.Evid. 403. This, again, is a matter of trial court discretion. While this statement is of limited probative value, we cannot say that the trial court abused its discretion in admitting it.

We reject Brown's arguments under divisions I and III and preserve the issue of his alleged newly discovered evidence un-

der division II for possible postconviction proceedings.

AFFIRMED.