STATE of South Dakota, Plaintiff
and Appellee,

v.

Jack FENDER, Defendant
and Appellant.

No. 17479.

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 1993.

Decided July 28, 1993.

Mark W. Barnett, Atty. Gen. and Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Bruce V. Anderson of Anderson Law Office, Wagner, for defendant and appellant.

PER CURIAM.

Jack Fender appeals. We addressed this case previously and determined the trial court erred by ruling on the motion for change of counsel without fully hearing Fender's justifications. *State v. Fender*, 484 N.W.2d 307, 309 (S.D.1992). We remanded the matter to the trial court for a "thorough hearing" into Fender's justifications for requesting a change of counsel. *Id.* On remand, the trial court held a hearing, entered findings of fact and conclusions of law, and issued an order denying Fender's request for change of counsel.

## FACTS

On February 9, 1990, Fender and Bruce Martin went to the home of Doug and Jan Woods. They forced their way into the home and proceeded to beat Doug Woods. The next day, Fender was charged with first degree burglary (SDCL 22-32-1) and aggravated assault (SDCL 22-18-1.1). State later dismissed the aggravated assault charge.

On December 7, 10, and 14 of 1990, Fender wrote letters to the trial court attempting to fire Owen Wipf as his attorney. In those letters he vaguely alleged that Wipf had a conflict of interest and was not working in his best interests. The trial court held a short hearing on Fender's request for new counsel, but Fender was not given the opportunity to justify his request before the trial court denied it.

Fender was scheduled for trial on January 23, 1991. State filed a motion the day of trial requesting permission to use prior convictions against Fender if he took the stand in his defense. The trial court granted State's motion. The case went to trial and Fender did not testify. He was found guilty of first degree burglary.

State filed a habitual offender information that listed three prior felonies: aggravated assault, May 14, 1983; escape, May 14, 1983; and driving while under the influence (third offense), July 22, 1988. Fender admitted that he was the person convicted in those three offenses. The trial court found him guilty of being a habitual offender and sentenced him to thirty years in the penitentiary. Fender appeals. We affirm.

## DECISION

**THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED FENDER'S REQUEST FOR CHANGE OF COUNSEL.**

Fender wanted the trial court to appoint a different attorney to represent him. To justify a change in counsel, Fender had to show "good cause." *State v. Iron Necklace*, 430 N.W.2d 66 (S.D.1988); *State v. Rough Surface*, 440 N.W.2d 746 (S.D.1989). On remand, after a thorough and extensive hearing on the issue, the trial court concluded that Fender had not demonstrated "good cause" to justify a change in counsel. A trial court's denial of a request for change of counsel will not be reversed unless there was an abuse of discretion. *Rough Surface*, 440 N.W.2d at 754.

The trial court entered detailed and extensive findings of fact in support of its decision. Fender alleges that several of those findings of fact are clearly erroneous. We have reviewed the remand record and find there is sufficient evidence to support each finding of fact. *See* SDCL 15-6-52(a).

Fender alleged five concerns about his relationship with Owen Wipf which caused him to request a change of counsel. First, Fender had heard that Doug Woods entered Wipf's office shortly after the February 9, 1990 attack. In fact, Doug Woods

had gone to the office on a separate civil matter being handled by Wipf's law partner, Kenneth Cotton. Wipf did not know Cotton had any professional relationship with the Woods. The trial court found there was no conflict of interest.[1]

Second, Fender alleged that Wipf was not working in his best interests. Although Fender was not very specific, it appears he was discontent because Wipf had not been able to get him released on bond.[2] At the remand hearing, Wipf testified he had already unsuccessfully attempted to get Fender released on bond and the trial judge was opposed to holding a second bond hearing. Wipf hesitated to make a futile request that might aggravate the trial judge. The remand evidence demonstrates that Wipf continued to work diligently for Fender and was eventually successful in getting him released on bond. Wipf testified that Fender was then content and apologized for his impatience. The trial court found that this episode did not constitute "good cause" to justify a change in counsel.

Third, Fender testified that his inability to communicate with Wipf created a "total lack of communications." Wipf has had his larynx removed and must speak through an electronic voice machine, but there was no evidence in the record that Wipf is unable to hear. The trial court found that Wipf's condition did not prevent communications between Wipf and Fender. We agree. This finding was not clearly erroneous and is particularly supported by Fender's admission that he and Wipf communicated at the hearings and in trial through written notes.

Fourth, Fender testified about disagreements he had with Wipf over trial tactics. Wipf testified that although he had disagreements over trial tactics, those disagreements were resolved. Fender contended that their relationship continued to

deteriorate up to and through trial. After considering all the evidence, the trial court concluded that the relationship between Wipf and Fender had not deteriorated.

Fifth, Fender testified that Wipf refused to allow him to testify. Wipf testified that he told Fender he could testify as long as he did not lie and that although Fender wanted to testify, he eventually agreed that he should not testify. Fender did not testify and did not complain to the trial judge that his attorney would not allow him to testify.

The trial court considered each of Fender's allegations and concluded that they did not justify a change in counsel. Each of the trial court's findings of fact is supported by evidence in the record. The trial court did not abuse its discretion in denying the motion for change of counsel.

## WIPF'S REPRESENTATION OF FENDER WAS NOT INADEQUATE.

■ Fender contends Wipf provided ineffective assistance of counsel. This claim seems to be based on the fact that Wipf has to speak through an electronic voice machine, which claim has already been considered and rejected.

■ Ordinarily, ineffective assistance claims will be addressed on direct appeal only when the representation was "so casual that the trial record evidences a manifest usurpation of appellant's constitutional rights." *State v. Wurtz*, 436 N.W.2d 839 (S.D.1989); *State v. Aliberti*, 401 N.W.2d 729 (S.D.1987); *State v. Hammond*, 357 N.W.2d 278, 279 (S.D.1984). Such claims are preferably handled in habeas corpus proceedings because the attorney accused of incompetence has the opportunity to explain his actions. *Aliberti*, 401 N.W.2d at 732. However, this case is unique because it was remanded to the trial court for further hearings concerning the relationship

---

1. The trial court also dismissed Fender's vague allegation that a conflict existed because both Wipf and Woods had been life-long residents of Wagner, while Fender was raised in Springfield.

2. It also seems that Fender felt that Wipf was not spending enough time on the case and was

not staying in contact with him. The trial court found and the remand record demonstrates that Wipf dedicated a significant amount of time to the preparation of the defense and had regular contact with Fender.

between Fender and Wipf. That remand record contains significant evidence of the extent and nature of the defense offered by Wipf on behalf of Fender. The trial court specifically noted that Wipf had provided a thorough and well-prepared defense. Fender has failed to show that Wipf's representation of him was inadequate.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN GRANTING STATE'S MOTION TO USE EVIDENCE OF PRIOR CONVICTIONS IF FENDER TOOK THE STAND.

■ Fender contends the trial court abused its discretion when it granted State's motion for permission to use evidence of Fender's prior convictions against him if he decided to take the stand and testify. Fender claims the trial court did not balance the prejudicial effect against the probative value. The hearing transcript shows otherwise. In ruling on the motion, the trial court stated:

Well, the Court will allow you to submit evidence under SDCL 19–14–12, as to past offenses and the nature of that offense. In other words, you will be able to ask Mr. Fender, if he takes the stand, whether he's the same Jack Fender convicted in Bon Homme County for the crime of aggravated assault. You will be able to ask him if he is the same Jack Fender that was convicted in Bon Homme County on such and such a date, for the crime of escape and that's all, as *the Court feels that these convictions are more probative than they are prejudicial.* ... (emphasis added).

Contrary to Fender's contentions, the trial court did balance the probative value of the evidence against the prejudicial effect. *See State v. Cross*, 390 N.W.2d 564, 568 (S.D.1990) ("[A]s long as there is some consideration of the matter, and an indication, on the record, that some weighing of factors occurred, no abuse of discretion will

be found."). The trial court did not abuse its discretion and is affirmed. *See State v. Loop*, 477 N.W.2d 40, 42 (S.D.1991) (citing *State v. Shult*, 380 N.W.2d 352, 355 (S.D. 1986)).

## THE TRIAL COURT DID NOT ERR IN CONCLUDING THAT FENDER IS A HABITUAL OFFENDER.

Fender claims the habitual offender information filed against him was defective for two reasons. First, he claims it was defective because it listed two convictions which arose from the "same transaction." Second, he claims it was defective because it listed a prior felony conviction for driving under the influence of alcohol.

SDCL 22–7–7 reads, in part:

When a defendant has been convicted of one or two prior felonies under the laws of this state or any other state or the United States, in addition to the principal felony, the sentence for the principal felony shall be enhanced by changing the class of the principal felony to the next class which is more severe.

SDCL 22–7–9 provides:

A prior conviction may not be considered under either § 22–7–7 or § 22–7–8 unless the defendant was, on such prior conviction, discharged from prison, jail, probation or parole within fifteen years of the date of the commission of the principal offense. In addition, only one prior conviction arising from the same transaction may be considered.

■ Fender notes that two of the convictions listed in the information were entered the same date. He claims they come from the "same transaction" and therefore both should not have been considered.[3]

We begin our analysis by noting that only one prior felony conviction is required under SDCL 22–7–7. *State v. Garritsen*, 421 N.W.2d 499 (S.D.1988). As in *Garritsen*, Fender was charged as a habitual offender under SDCL 22–7–7. Accordingly, the trial court could base a habitual offend-

---

**3.** We will assume for the purposes of argument that both convictions arose out of the "same transaction." However, it is not clear from the record that they did arise out of the "same

transaction." Aside from pointing out that they were entered on the same day, Fender has not come forward with any other evidence to show they are related.

er conviction on one valid prior felony conviction. Either of the "same transaction" convictions alone could be used and would justify a habitual offender conviction. Including the second "same transaction" conviction would be harmless error.

 Second, Fender argues it was improper to base a habitual offender conviction on a third offense driving while under the influence conviction ("DUI"). Fender contends this Court's opinion in *Carroll v. Solem,* 424 N.W.2d 155 (S.D.1988) prohibits use of a DUI felony conviction as the basis for a habitual offender enhancement. In *Carroll,* we said a third DUI conviction is already enhanced under the DUI statutes and therefore it is not appropriate to *enhance it again* under the general habitual offender statute. However, our ruling in *Carroll* does not prevent the use of a felony DUI conviction to enhance *other subsequent felony convictions.*

Even if one of the "related" convictions and the DUI conviction were removed, there is still a valid prior felony conviction to support a habitual offender conviction under SDCL 22–7–7. Any error was harmless error under the analysis applied in *Garritsen.* We affirm the trial court in all respects.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.