### A93A1270. HORNSBY v. THE STATE.
(436 SE2d 767)

MCMURRAY, Presiding Judge.

Defendant was convicted of burglary, rape, two counts of aggravated sodomy and aggravated assault. Following the imposition of sentence, he appealed. *Held*:

1. The victim was attacked in the middle of the night by an assailant wielding a knife. The assailant stated that he had been drinking. He raped and sodomized the victim and threatened to cut her with the knife and to kill her.

The victim was a neighbor of defendant's mother. She had known defendant since he was a child because her son and defendant were friends.

Defendant was living with his mother when the victim was attacked. Shortly after the attack on the victim, defendant told his brother-in-law that he had gotten drunk and woke up in the morning with a knife by his side. He speculated that he might have killed or

raped somebody. That led defendant's mother to ask defendant if he had anything to do with the attack on the victim. He said that he did not.

Approximately three weeks after the victim was attacked, defendant started quarreling with his mother. He had been drinking and thought that his mother had interfered with his relationship with a girl friend. Defendant turned over a table, smashed a microwave, and picked up a butcher knife. He ran outside and slashed the tires on his mother's automobile. Returning inside, he threw his mother down on the living room couch and held the knife to her chest. He threatened to kill her and hollered, "Hell, yes, I raped the bitch." At that point, defendant's brother entered the room with a loaded shotgun. The shotgun went off and the discharge hit the floor. Defendant charged his brother who hit him over the head with the shotgun and took away the knife. Then defendant ran away, hollering: "I'll kill the old bitch."

Defendant acknowledges that the statements he made to his mother and brother were admissible in evidence. He asserts, however, that the circumstances surrounding the statements were inadmissible. In that regard, defendant insists that the subsequent events which took place at his mother's house are not similar to the crimes charged against him. He argues that the trial court erred in admitting the events surrounding the statements into evidence because they are not similar transactions.

Defendant's argument misses the mark. The events which took place at defendant's mother's house were not admitted as similar transaction evidence. On the contrary, the trial court admitted the evidence to show the totality of the circumstances surrounding defendant's statements.

The trial court did not err in admitting into evidence the events leading up to and surrounding defendant's statements. The jurors would have been hard pressed to assess the statements if they heard them in a vacuum. They needed to know if the statements were made voluntarily. See *Phillips v. State*, 206 Ga. 418, 420 (4c) (57 SE2d 555). They also needed to know what led defendant to make the statements and the manner in which they were made so they could give them the weight they deemed appropriate. See generally OCGA § 24-3-53.

The mere fact that defendant may have been prejudiced by the totality of the circumstances surrounding the making of the statements is of no consequence. The circumstances were admissible whether or not they introduced evidence of other crimes. See *Ledford v. State*, 215 Ga. 799, 805 (113 SE2d 628); *Laney v. State*, 159 Ga. App. 609, 610 (4) (284 SE2d 114). In passing, we note that defendant himself made use of the circumstances surrounding his statements, testifying that he only made the statements in anger and out of spite.

2. The trial court did not err in permitting the victim to identify defendant — during rebuttal and after defendant took the stand and testified — based on the sound of defendant's voice. The victim's in-court voice identification of defendant in rebuttal was admissible. *Stith v. State*, 201 Ga. App. 621 (1) (411 SE2d 532). That the victim was unable to identify defendant previously was a matter which went to the weight, not the admissibility, of the victim's testimony.

3. During closing argument, defense counsel objected and moved for a mistrial in response to the following remarks made by the State's attorney: "They noted we have paid prosecutors. Well, yes, there are paid prosecutors. There are also appointed attorneys to represent defendants, such as [defense counsel here], paid for by the same people that pay us. There are also defense experts that testify for defendants. They are also paid by the State, by the people that provide the appointed attorneys; by you, so that he may have a fair trial." The trial court offered to give a detailed curative instruction but defense counsel declined the offer, fearing that it would only serve to emphasize the State's argument. Instead, defendant insisted that he be granted a mistrial. The trial court denied the motion, but sustained defendant's objection to the argument, instructing the jury "to disregard the last remarks of counsel for the State."

Defendant asserts the trial court erred in denying his motion for a mistrial. We disagree.

" '(T)his court has repeatedly held that if the trial judge acts immediately, and in the exercise of his discretion takes such action as in his judgment prevents harm to the accused as a result of such improper statements, a new trial will not be granted unless it is clear that such action failed to eliminate from the consideration of the jury such improper statements. *Brown v. State*, 148 Ga. 264, 266 (96 SE 435); *Johnson v. State*, 150 Ga. 67 (1) (102 SE 439); *Waller v. State*, 164 Ga. 128 (4) (138 SE 67); *Nelson v. State*, 187 Ga. 576, 583 (1 SE2d 641); *Spell v. State*, 225 Ga. 705, 708 (171 SE2d 285). See also *Moore v. State*, 228 Ga. 662, 664 (187 SE2d 277).' *Howard v. State*, 229 Ga. 839, 840 (195 SE2d 14). As in those cases, no abuse of discretion appears here." *Walker v. State*, 132 Ga. App. 274, 275 (3) (208 SE2d 5).

4. The State's expert on deoxyribonucleic acid ("DNA") identification testified that there was a five-probe match between DNA in the semen recovered from the victim and defendant's DNA. He also testified that the chances that the semen recovered from the victim belonged to someone other than defendant were one in seventy million, or conservatively one in 10 million. (Defendant's DNA expert opined that the odds were one in thirty million.) The State's expert based his calculation on a crime laboratory DNA data base made up of 500 blacks and 300 whites.

Defendant asserts the trial court erred in admitting evidence concerning the frequency that defendant's DNA pattern can be found in the population because the State's statistical analysis was based on a small, random sample sent to the crime laboratory. In that regard, he points out that larger, national data bases are in the process of being put together. He argues that until there is a larger data base and a consensus on an accepted statistical method, statistical calculations concerning chromosome pattern frequencies should be ruled inadmissible. We disagree.

The State's expert described in great detail how the data base was compiled and why assumptions based on the data base were valid. Compare *Caldwell v. State*, 260 Ga. 278, 288 (1) (e) (393 SE2d 436) with *Greenway v. State*, 207 Ga. App. 511, 514 (4) (428 SE2d 415). He proffered liberal and conservative estimates. (Significantly, the conservative estimate of the State's expert was more conservative than the estimate of defendant's expert.) Defendant was permitted to cross-examine the expert with regard to the compilation of the data base and the statistical method used to calculate the statistics. It cannot be said that the trial court erred in permitting the State's expert to estimate the frequency that defendant's DNA pattern occurs in the population. See *Evans v. State*, 256 Ga. 10, 12 (2) (342 SE2d 684).

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED OCTOBER 18, 1993.

*J. Russell Jackson,* for appellant.

*Garry T. Moss, District Attorney, Charles D. Gafnea, Assistant District Attorney,* for appellee.