**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Donald Lee SCHWEITZER, Defendant and Appellant.**

No. 18640.

Supreme Court of South Dakota.

Argued Oct. 19, 1994.

Decided June 14, 1995.

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Ron J. Volesky, Huron, for defendant and appellant.

AMUNDSON, Justice.

Defendant Donald Schweitzer (Schweitzer) appeals from a conviction for vehicular homicide. He alleges the trial court erred in allowing expert testimony as to statistical conclusions on DNA test results. We affirm.

### FACTS

At approximately 6:20 a.m. on June 12, 1993, Schweitzer and four companions were travelling west on Highway 14 outside of Huron. The car was speeding in excess of 124 miles per hour and all passengers had been drinking. The driver lost control of the vehicle. It left the highway, hit a utility pole and rolled four times before coming to rest. David Seibert (decedent), age 24, was thrown from the car and died within minutes from severe trauma.

When authorities arrived at the scene, Schweitzer and two other passengers indicated the decedent had been driving at the time of the crash. However, five or six days later, upon reconsideration and advice of counsel, the two passengers contacted authorities and stated they had given false information regarding the actual identity of the vehicle's driver. Both men said they felt guilty about implicating an innocent man and told police the true driver at the time of the crash was Schweitzer.

An investigation ensued. On June 21, 1993, Schweitzer was charged with one count of vehicular homicide in violation of SDCL 22–16–41 and one count of manslaughter in the second degree in violation of SDCL 22–16–20. Schweitzer entered a plea of not guilty. A jury trial was held October 20–21, 1993.

During trial, Dr. Eugene Butler (Butler), a DNA expert, testified regarding DNA tests that were conducted on a small sample of blood taken from the headrest on the driver's side of the vehicle. Butler explained both the testing procedure and possible statistical outcomes from the test's results. Butler stated that, in his opinion, the blood on the headrest was not the decedent's. He further

indicated that the DNA genotypes, a matching component in DNA testing, were indistinguishable from those of Schweitzer. Butler opined that the probability of a random member of the United States Caucasian population having the same combination of genotypes as found on the headrest was about 1 in 18,700.

Schweitzer did not object to Butler's testing protocol. In fact, Schweitzer's own expert agreed with the method Butler used. Nevertheless, Schweitzer objected to Butler's statistical conclusion regarding the probability of Schweitzer's same genotype occurring at random within the population. The basis for the objection was that Butler's statistical conclusion lacked the proper foundation.

The jury ultimately convicted Schweitzer of vehicular homicide. He was sentenced to fifteen years in the South Dakota State Penitentiary pursuant to the habitual offender statute, SDCL 22-7-7. He now appeals his conviction, alleging Butler's statistical conclusions were inappropriate and unfairly prejudicial under SDCL 19-12-3.

### ISSUE

DID THE TRIAL COURT ERR BY ALLOWING DR. BUTLER, THE STATE'S DNA EXPERT, TO TESTIFY AS TO STATISTICAL CONCLUSIONS?

### STANDARD OF REVIEW

■ A trial court has a broad discretion concerning the admission of expert testimony. *State v. Hill*, 463 N.W.2d 674 (S.D.1990). The trial court's decision to admit Butler's testimony will be reversed only upon a clear showing of abuse of discretion. *Hill*, 463 N.W.2d 674; *State v. McCord*, 505 N.W.2d 388 (S.D.1993) (citing *State v. Burtzlaff*, 493 N.W.2d 1 (S.D.1992)).

### DECISION

Before we discuss whether or not the trial court abused its discretion, we must first explain Butler's "statistical conclusion" testimony and the basis for Schweitzer's objection to it. Every human being, barring identical twins, has a separate and distinct DNA sequence. *See* Report of Committee on DNA Technology in Forensic Science, National Research Council, *DNA Technology in Forensic Science*, 3-1 (April, 1992); *State v. Cauthron*, Supr. (*en banc*), 120 Wash.2d 879, 846 P.2d 502 (1993); *State v. Vandebogart*, 136 N.H. 365, 616 A.2d 483 (1992). Uncovering a person's identity is therefore possible through DNA typing if scientists examine various sites of human genomes. *Id.* DNA methods used by scientists today examine only a few such sites. *Id.* Still, a "match" between two DNA patterns can be considered strong evidence that the two samples came form the same person.

■ A "statistical conclusion" is an estimation of the probability that a random person might by chance have the same DNA patterns or genetic types that match at the small number of sites examined. *Id.* The statistical conclusion allows a fact-finder to weigh the significance of a DNA match between a defendant and a forensic sample. *Id.* "To say that two patterns match, without providing any scientifically valid estimate (or, at least, an upper bound) of the frequency with which such matches might occur by chance, is meaningless." *Id.* Schweitzer argues that to allow statistical conclusions regarding a DNA match places undue weight on the DNA test in the eyes of the jury. We cannot agree.

■ The determining factor of admissibility of expert testimony is whether or not the testimony will assist the jury in understanding matters that would ordinarily be outside a layperson's knowledge. *McCord*, 505 N.W.2d at 391; *State v. Swallow*, 350 N.W.2d 606 (S.D.1984). Although jurors' common sense and experience provides them with a solid basis to weigh evidence of identification, they do not possess an "expert's comprehensive training in assessing the reliability of identification." *McCord*, 505 N.W.2d at 391. "To be a proper subject of expert testimony, the testimony must present the jury with a system of analysis that the court, in its discretion, can find reasonably likely to aid in a common understanding of the issue before the court." *Hill*, 463 N.W.2d at 674 (citing *United States v. Fosher*, 590 F.2d 381 (1st Cir.1979)).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. ——, ——, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469, 480 (1993), the United States Supreme Court held the admission of expert scientific testimony was no longer governed by *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). Instead, the Court adopted Federal Rule of Evidence 702 as its test of admissibility, which provides: "[I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise."

■ This court, in *State v. Hofer,* 512 N.W.2d 482 (S.D.1994), recognized the *Daubert* decision. When presented with the question of admitting expert testimony, a trial court's task is one of " 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant. . . . Pertinent evidence based on scientifically valid principles will satisfy those demands.' " *Id.* at 484 (quoting *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2799, 125 L.Ed.2d at 485).

Schweitzer does not dispute the scientific principles upon which Butler's conclusions were based. In fact, Schweitzer's own expert reviewed the DNA procedure and concluded that nothing was "procedurally inaccurate" with Butler's work. Schweitzer's expert was not called at trial. Instead, his sole argument as to the admissibility of Butler's conclusions was that they lacked foundation.[1] In his brief and during oral argument, Schweitzer argued that admitting Butler's testimony would be overly prejudicial compared to the evidence's probative value.

■ In a pretrial motion's hearing, the trial court considered the probative versus prejudicial value of Butler's conclusions and balanced the competing interests. We have held that trial courts are given additional discretion in such balancing tests. *Hill,* 463 N.W.2d at 677. Each case must be considered in light of its facts. In this case, Butler's statistical conclusions on the DNA test

results were necessary to give the average juror a basic understanding of what a DNA match means in relation to identification. His testimony at trial provided the probability of Schweitzer's match occurring at random in a given population sample:

> DR. BUTLER: The conclusions, the dried blood that was scraped from the headrest cushion was not derived from David Seibert. The genotypes observed for the headrest derived specimen are indistinguishable from these observed from Donald Schweitzer derived specimen. The chance that a random member of US Caucasian population—
>
> MR. VOLESKY: Objection, . . . lack of foundation.
>
> THE COURT: Overruled.

> .    .    .    .    .

> DR. BUTLER: The chance that a random member of the US Caucasian population would possess the same combination of genotypes . . . is about 1 out of 18,700.

Due to the highly scientific nature of the test, this conclusion was appropriate to assist the jury in understanding this technical evidence. *Id.*

■ In *State v. Fender,* 504 N.W.2d 858 (S.D.1993), this court held that a trial court's determination of admissibility under Rule 403 will not be reversed as long as proper consideration is given to both prejudicial and probative factors. *Id.* at 860 (citing *State v. Cross,* 390 N.W.2d 564, 568 (S.D.1990)). "[A]s long as there is some consideration of the matter, and an indication, on the record, that some weighing of factors occurred, no abuse of discretion will be found." *Id.*

■ In Schweitzer's case, we believe the trial court did not abuse its discretion under both the *Hofer* standard of admitting expert testimony and Rule 403. The motion's hearing transcript indicates that the trial court was concerned about relevancy, possible prejudices and defense challenges to the testing results if this testimony was admitted.

---

1. Schweitzer's objection to this evidence is found in the trial transcript as follows:

   MR. VOLESKY: Objection, before he gets into the statistical conclusion aspect of it, I would make an objection as lack of foundation for that testimony at this time.

   THE COURT: Overruled. Go ahead.

The court provided Schweitzer with his own expert to review Butler's procedures and, if necessary, testify at trial.

■ Given the need for Butler's conclusions to make sense of the DNA findings, we cannot say the trial court abused its discretion in allowing this testimony. Schweitzer incorrectly relies on a Minnesota case, *State v. Schwartz*, 447 N.W.2d 422 (Minn.1989), to argue Butler's conclusions improperly influenced the weight of the DNA results in the minds of the jurors. The Minnesota Supreme Court recently revisited this issue in *State v. Bloom*, 516 N.W.2d 159 (Minn.1994). In *Bloom*, the court created an exception to *Schwartz*. It held that quantitative statistical evidence of DNA results was warranted in order to prove identity in criminal prosecutions. We believe Schweitzer's case falls clearly within the *Bloom* exception.

■ Other jurisdictions have similarly held that statistical conclusions are necessary to explain DNA results. For example, the Delaware Supreme Court in *Nelson v. State*, 628 A.2d 69 (Del.1993), held that expert testimony providing statistics on a DNA match was a prerequisite to admitting the test results at all. *Id.* at 76. The court determined that statistical calculations are "essential for the evidence to have relevance or meaning to the trier of fact." *Id.* "To say that two patterns match, without providing any scientifically valid estimate . . . of the frequency with which such matches might occur by chance, is meaningless." *Id.*

In *State v. Brown*, 470 N.W.2d 30 (Iowa 1991), the Iowa Supreme Court recognized the importance of providing the jury with expert testimony regarding statistical conclusions in order for it to fully comprehend the evidence.

[I]t is doubtful that jurors could take the probabilities . . . combine them, and arrive at an answer with any degree of certainty as to its correctness. Furnishing statistical analysis would assist the trier of fact in such a case and that is the heart of admis-

sibility under Rule 702. Without statistical evidence, the ultimate results of DNA testing would become a matter of speculation. *Id.* at 33. The court still recognized the jury's prerogative to disregard the testimony, rejecting the argument that statistical conclusions remove the issue of guilt from jury deliberation. *Id.*

Likewise, Wyoming and Michigan courts have held statistical conclusions are proper to provide the jury with a complete understanding of DNA evidence. *See Springfield v. State*, 860 P.2d 435 (Wyo.1933) (holding a DNA match is virtually meaningless without a statistical probability expressing the frequency with which it could occur); *People v. Adams*, 195 Mich.App. 267, 279, 489 N.W.2d 192 (1992), *modified in part on other grounds* 441 Mich. 916, 497 N.W.2d 182 (1993) (holding statistical conclusions admissible and questions regarding the size of a test's database goes to the weight, not admissibility, of the evidence).

Finally, the court in *Hornsby v. State*, 210 Ga.App. 571, 436 S.E.2d 767 (1993), upheld the trial court's decision to admit expert testimony on the frequency of the defendant's DNA pattern within the general population. *Id.* 436 S.E.2d at 769. The *Hornsby* court admitted the conclusion because defendant's counsel had an equal opportunity to cross-examine the expert on both the method and assumptions used to calculate the statistics. *Id.*

■ In the case at bar, Schweitzer had an opportunity to cross-examine Dr. Butler on the foundation of his conclusions. Furthermore, Schweitzer had an independent expert available to refute Butler's conclusions or database but did not call him to testify. Therefore, it was up to the jury to hear the testimony and decide the credibility and weigh Dr. Butler's opinion. The trial court properly instructed the jury on these issues.[2]

In light of the above holding, we find it unnecessary to address the issue of harmless

---

2. It is important to note that DNA evidence should not be received carte blanche. When challenging the admissibility of DNA evidence or statistical conclusions therefrom, counsel would be well advised to attack such evidence through vigorous cross-examination, introduction of contrary expert testimony and presentation of appropriate instructions for the jury. No such challenges were done in this case.

error. Reviewing the record as a whole in this case, we cannot say the trial court abused its discretion in allowing the statistical conclusions.

Affirmed.

MILLER, C.J., and SABERS, J., concur.

KONENKAMP, J., and WUEST, Retired Justice, concur in part and dissent in part.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

WUEST, Retired Justice (concurring in part and dissenting in part).

I concur in the majority opinion except for the dicta in footnote 2.

I am hereby authorized to state that Justice KONENKAMP joins this concurrence in part and dissent in part.