**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**Edward J. WERNER, Defendant
and Appellant.**

No. 17434.

Supreme Court of South Dakota.

Argued Oct. 23, 1991.

Decided March 4, 1992.

Rehearing Denied April 13, 1992.

Mark W. Barnett, Atty. Gen., Ronald D. Campbell, Karen E. Cremer, Asst. Attys. Gen., Pierre, for plaintiff and appellee.

James C. Roby of Green, Schulz, Roby & Oviatt, Watertown, for defendant and appellant.

MILLER, Chief Justice.

Edward J. Werner, a Lutheran minister, appeals his conviction of five counts of sexual contact and two counts of attempted sexual contact with a child under the age of sixteen. We affirm.

### FACTS

Werner became the pastor for St. Peter's Lutheran Church in Goodwin, South Dakota, in 1963. In 1967, he became pastor of several combined churches, principally serving Our Savior's Lutheran Church in South Shore, South Dakota, and St. Peter's Lutheran Church in Goodwin.

As pastor, Werner was responsible for conducting Sunday services and supervising the programs at each church. He taught confirmation classes on Saturday mornings in South Shore for seventh and eighth grade children of the two parishes.

On April 16, 1990, a complaint was filed charging Werner with six counts of sexual contact with a child under the age of 16 (a violation of SDCL 22–22–7) and two counts of attempted sexual contact with a child under the age of sixteen (a violation of SDCL 22–22–7 and 22–4–1). An amended complaint dated May 22, 1990, added an additional charge of sexual contact with a child under the age of sixteen. All of the complaints alleged the sexual contact between Werner and the young female parishioners occurred during church-related activities during the period from October 1987 to March of 1990.

These five young girls, all members of Werner's parish, claimed Werner had touched or attempted to touch their breasts, lower backs and buttocks. This contact was initiated at different times and at different locations, including: the hallway of the church, during a Christmas party at the church, during a church swimming party in Watertown, in the confirmation classroom, and in the fellowship hall of the church. At the time the contact was initiated, the girls ranged in age from eight to fourteen years old.

State notified Werner on three separate occasions of its intention to use testimony from witnesses claiming that Werner had previous sexual contact with them. State intended to use this testimony, pursuant to SDCL 19–12–5, to show proof of Werner's intent, motive, opportunity, common scheme or plan, and absence of mistake or accident in his commission or attempts to commit acts of sexual contact.

The other acts witnesses also were members of Werner's parish when they were young women. The testimony of these grown women described encounters with Werner where he fondled their breasts, and kissed and embraced them. The testimony elicited from these women indicated that Werner had sexual contact with young women of his parish for every year from 1962 to 1990 with the exception of 1983 and 1986.

After receiving the first notice, Werner filed a motion in limine seeking to prohibit the admission of this other acts testimony because it was not relevant and its probative value was substantially outweighed by its prejudicial effect.

On July 10, 1990, a hearing was held on the motion in limine. The trial court denied Werner's motion and set forth its decision and findings of fact and conclusions of law on August 27, 1990. In its conclusions of law, the trial court specified each reason other acts testimony could be admitted.

The court concluded that State presented clear and convincing evidence that this testimony was relevant to show proof of opportunity, common scheme or plan, motive, intent for sexual gratification, absence of mistake, or accident.

Furthermore, the trial court addressed the issue of remoteness and concluded that when considered with other factors such as reliability, necessity, nature of the offenses, and similarity of the occasions and locations, the other acts were not remote in time.

Finally, the trial court concluded that the other acts testimony would not confuse the jury, and had probative value as evidence of the crimes charged. The court performed the appropriate balancing test and determined that the probative value was not substantially outweighed by the danger of unfair prejudice.

Thereafter, the State made a motion to admit the testimony of another other acts witness. On October 17, 1990, pursuant to this motion, a hearing was held. The trial court granted State's motion and again filed findings of fact and conclusions of law.

At the commencement of the trial, State made a motion to admit the testimony of one more witness. This witness claimed that she had also been touched by Werner when she was a member of his parish. The trial court granted State's motion.

At trial, Werner offered expert testimony on the generalized theory of human memory. The trial court did not allow this testimony. However, the expert was permitted to testify as to the effect that investigative techniques have on memory. The jury convicted Werner of five counts of sexual contact and two counts of attempted sexual contact with a child under the age of sixteen. He was acquitted of two counts of sexual contact. Thereafter, Werner was sentenced to the South Dakota State Penitentiary.

## ISSUES

### I.

WHETHER THE TRIAL COURT IMPROPERLY ADMITTED TESTIMONY OF OTHER ACTS WITNESSES TO SHOW PROOF OF OPPORTUNITY, COMMON SCHEME OR PLAN, MOTIVE, INTENT AND LACK OF MISTAKE OR ACCIDENT.

On appeal, Werner contends that the trial court abused its discretion in admitting the other acts testimony. Specifically, Werner claims that the trial court improperly admitted the evidence because it failed to specify a particular exception to SDCL 19–12–5 (Fed.R.Evid. 404(b)) and because the other acts testimony was too remote. Finally, Werner claims it was improper to allow the other acts testimony to be presented before State established the basic elements of the crime.

■ The trial court's decision to admit other act evidence will not be overruled absent an abuse of discretion. *State v. Chapin*, 460 N.W.2d 420 (S.D.1990). The admissibility of other acts testimony is governed by SDCL 19–12–5, which is almost identical to Federal Rule of Evidence 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Recently, in *State v. Basker*, we discussed the two-step approach which must be followed when the trial court is ruling on the admissibility of other acts testimony:

(1) Whether the intended purpose for offering the other acts evidence is relevant to some material issue in the case, and

(2) Whether the probative value of the evidence is substantially outweighed by its prejudicial effect.

468 N.W.2d 413, 415 (S.D.1991), *State v. Dickey*, 459 N.W.2d 445 (S.D.1990); *State*

*v. Klein,* 444 N.W.2d 16 (S.D.1989); *State v. Champagne,* 422 N.W.2d 840 (S.D.1988).

The first inquiry pertains to the factual relevancy of the evidence, since evidence of other bad acts is inadmissible to prove bad character. For example, "whether the proffered evidence has any tendency to make the existence of any fact that is of consequence more probable or less probable than it would be without the evidence." *Basker,* 468 N.W.2d at 416. The second inquiry concerns legal relevancy: "Whether the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.;* SDCL 19–12–3 [1] (Fed.R.Evid. 403).

Furthermore, the trial court must identify the exception:

> In each case in which bad act evidence is sought to be admitted, the trial court should identify the applicable exception and perform an analysis of the facts and nature of the prior bad acts.

*Chapin,* 460 N.W.2d at 422. *The list of exclusions in the statute is not exhaustive as evidenced by the language "such as."* "[T]he statute lists the most usual instances in which 'other acts' will be admissible as long as proof of the intended purpose is relevant to some material issue in the case." *Champagne,* 422 N.W.2d at 842; *State v. Dokken,* 385 N.W.2d 493 (S.D. 1986).

■ The trial court held three evidentiary hearings on the other acts evidence. State filed interviews of seventeen witnesses describing Werner's sexual contact with them. At trial, eleven of these women were subpoenaed to testify. All of the women testifying at trial were, at various times, members of Werner's parish. Except for two women, the sexual contact always occurred during a church-related activity. Both women who claimed the con-

tact did not take place at church-related activities stated the contact occurred when Werner drove them home after babysitting. One woman testified that in addition to the sexual contact initiated during church activities, that Werner, who was an emergency medical technician, fondled her while she was being transported in an ambulance. These women were from 12 to 16 years old when Werner first initiated contact with them.

The trial court examined the factual relevancy of the proffered testimony and concluded that this testimony was factually relevant to the issues on trial for the purpose of proving opportunity, common scheme or plan, motive, intent, and absence of mistake or accident.

■ Once factual relevancy is determined, the trial court must perform a balancing test to determine whether the prejudicial effect of the evidence substantially outweighs its probative value. Werner claims the other acts testimony was too remote from the acts charged. When standing on its own, the testimony from these women may appear remote in time. In fact, the other acts evidence spanned several years. However, in determining probative value, remoteness must be considered with other factors, such as reliability and necessity. *State v. Titus,* 426 N.W.2d 578 (S.D.1988).

Furthermore, "[t]he trial court must consider the nature of the offenses, the similarity of occasions and locations as well as the time elapsed between incidents." *Id.* at 580. "[W]hether prior acts are too remote must realistically depend on their nature." *State v. Wedemann,* 339 N.W.2d 112 (S.D. 1983). Moreover, "each case depends upon its own particular facts as to a limitation, regarding vintage, on the remoteness. Admission of prior acts must realistically depend upon their nature." *Titus,* 426 N.W.2d at 582 (Henderson, J., concurring specially).

---

1. SDCL 19–12–3 provides:

    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

It is evident that the nature of Werner's other bad acts and his modus operandi showed that he would develop a relationship of trust with the young girl and her family through the church. The other acts complained of almost exclusively occurred through a church-related activity and took place consistently for almost a thirty-year period.

In this case, the trial court determined that the acts had probative value as evidence of the crimes charged and that there was a substantial need for this evidence in order to prove the crimes with which Werner was charged. The court further found that there was no other evidence of equal probative value, and the introduction of this evidence would not confuse the issues, would not mislead the jury, would not cause undue delay, and would not constitute a needless presentation of cumulative evidence. The court performed this delicate balancing test and decided the danger of unfair prejudice did not substantially outweigh the probative value. Werner's acquittal on two charges seems to support that determination.

We believe the trial court did exactly what we required in *Basker* and *Chapin*. There was adequate information to properly perform the balancing test required by SDCL 19-12-5. The trial court performed a meaningful analysis and identified the specific exceptions under which the testimony was admitted. *Furthermore, the trial court instructed the jury that the other acts evidence was to be considered only for the purpose of showing opportunity, common scheme or plan, motive, intent, and absence of mistake or accident.* The jury's acquittal on two counts indicates it followed this instruction.

We reiterate that the determination of whether the probative value is substantially outweighed by its prejudicial effect is a question left to the sound discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent a

clear abuse of that discretion. *Titus,* 426 N.W.2d at 580; *Champagne,* 422 N.W.2d at 842; *State v. Grooms,* 399 N.W.2d 358, 361 (S.D.1987); *Dokken,* 385 N.W.2d at 497.

Finally, Werner claims it was improper to present the testimony of the other acts witnesses before State established the basic elements of the crime and that this testimony was presented only to show Werner's bad character. We disagree. This chronological evidence was both factually and legally relevant to the charges against Werner. It was not admitted for the improper purpose of showing bad character. Furthermore,

> [A]s a general rule it is preferable to delay the admission of 404(b) evidence until after the defense rests because it places the trial court in the best position to determine whether the issue sought to be proved by the extrinsic act evidence is really in dispute, and if so, to assess its probative worth and possible prejudicial effect.

*United States v. Estabrook,* 774 F.2d 284, 289 (8th Cir.1985). However, "where it is made clear at the outset of the trial that the defendant's principal defense is lack of knowledge or intent, and thus the issue is unarguably in dispute, the government may ... introduce the [other acts] evidence in its case-in-chief." *Id.*

In this case, the trial court had ample opportunity to determine whether there was a real dispute. Werner denied having sexual contact with any of the victims currently accusing him.[2] He claimed that the contact was in the nature of comforting, joking or playing and that he had no intent to sexually gratify himself. At the time defense counsel objected to State's introduction of other's acts evidence, the trial court had already held three hearings on the issue.

Moreover, the order of proof is within the sound discretion of the trial court and an appellate court will reverse

---

**2.** Werner denies having sexual contact with any of the young girls with which he is currently facing charges. However, he did admit that he touched the breasts of at least two of the other acts witnesses and had no recollection of the incidents claimed by some of the other acts witnesses.

only if there is an abuse of that discretion. *Dodds v. Bickle,* 77 S.D. 54, 85 N.W.2d 284 (1957); 75 Am.Jur.2d *Trial* § 354 (1991). In this case, we find that the trial court did not abuse its discretion in allowing the State to introduce the testimony of the other acts witnesses prior to establishing the elements of the crime charged. We reiterate that the other acts testimony could hardly be said to paint Werner as a bad person, since the jury saw fit to acquit him on two counts.

## II.

### WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN RESTRICTING WERNER'S EXPERT'S TESTIMONY.

Werner argues that the trial court erred when it refused to allow his defense expert to testify to the jury as to the manner in which human memory functions.

■ The admissibility of expert testimony is controlled by SDCL 19–15–2 (Fed. R.Evid. 702):

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The trial court has broad discretion regarding the admissibility of expert testimony. *State v. Hill,* 463 N.W.2d 674 (S.D.1990); *State v. Bachman,* 446 N.W.2d 271 (S.D. 1989); *United States v. Purham,* 725 F.2d 450 (8th Cir.1984). Absent an abuse of discretion, this decision will not be reversed. *State v. Logue,* 372 N.W.2d 151 (S.D.1985).

■ In order to admit psychological evidence, the testimony must be a proper subject for expert testimony. *Hill,* 463 N.W.2d at 677. This has been interpreted in two ways: "(1) [T]he subject of the expert's testimony must lie beyond the knowledge and experience of the average lay person; *State v. Swallow,* 350 N.W.2d 606 (S.D.1984); *Bachman,* 446 N.W.2d at

275 and (2) the expert must not invade the province of the jury." *Hill,* 463 N.W.2d at 677.

■ Under the first test, the determining factor is if the expert testimony would assist the jury in understanding matters normally outside of a lay person's breadth of knowledge. *Id.* Werner's expert would have testified as to the generalized theory of how memory works, which he claims would have been helpful to the jury in understanding the evidence. Specifically, Werner argues that the jury should have considered how the Division of Criminal Investigation (DCI) agent influenced the witnesses' testimony after hearing from the expert how such influence can change and affect memory.

In response to Werner's argument, the trial court allowed the expert to testify regarding investigative techniques and also the effect improper techniques may have on the resulting answers in interviews. However, the trial court thought that it would be "overly confusing and not helpful to the jury" to hear testimony on the generalized theory of memory. We agree.

■ Under the second test, we must analyze whether the expert is invading the province of the jury. Under South Dakota law, an expert may not testify if his testimony includes the expression of opinion regarding ultimate issues. *Id.; Logue, supra.* Werner's expert was allowed to testify at great length regarding interview techniques. He was not allowed to reach the ultimate issue, which in this case was whether the testifying witnesses had in fact been influenced by the DCI agent. This was a determination for the jury as trier of fact. *McCafferty v. Solem,* 449 N.W.2d 590 (S.D.1989).

Finally, the trial court in its discretion must balance the probative value of this expert testimony against its prejudicial effects. In *Hill,* we said: "Consequently, we hold that any small aid the expert testimony might have provided would be outweighed by the unfair prejudice which might have resulted because of the aura of reliability and trustworthiness surrounding

scientific evidence." 463 N.W.2d at 678; *Logue*, 372 N.W.2d at 157. Likewise, the same rationale applies here. We hold that the trial court did not abuse its discretion in excluding portions of the defense expert's testimony.

Affirmed.

WUEST, J., concurs.

HENDERSON, J., concurs specially.

AMUNDSON, J., concurs in part and dissents in part.

SABERS, J., dissents.

HENDERSON, Justice (specially concurring).

As a child, Abraham Lincoln was sorely distressed when he could not understand the expressions and thoughts of grownups as they talked at night in his home. Comments of the adults confounded him for he could not comprehend them, being a boy. So to understand words—their meaning—became in his own words "a kind of passion with me." As our esteemed President, he expressed: "I am never easy now, when I am handling a thought, till I have bounded it north, and bounded it east, bounded it south, and bounded it west." Unfortunately, those of us who study the law, cannot always "bound it" together. I am no exception. Lincoln's law partner, William Herdon, in a testimonial on Lincoln's mental processes, expressed inter alia, that "He saw all things through a perfect mental lens. There was no diffraction or refraction." Again, Herndon expressed: "No lurking illusion or other error, false in itself and clad for the moment in robes of splendor, ever passed undetected over the threshold of his mind." [1] Few of us are so endowed. Thus, we conceptualize differently and express ourselves in varying words. Born is a difference in opinion and a different way to say it. Perforce, concurring opinions are written, dissenting opinions are filed, special concurrences are triggered, and concurrences in result are

formed into words. Opinion writing is a fascinating calling. Precedent is created thereby. Majority opinions have precedential bite and well they should. A special writing may or may not provide a positive influence to jurisprudence. In Moorhead, Concurring and Dissenting Opinions, 38 A.B.A.J. 821 (1952), as quoted in Opinion Writing, by Ruggero J. Aldisert, Senior United States Circuit Judge, West Publishing Co., St. Paul, Minn., 1990, at 166, proper functions of a separate opinion may, inter alia, be:

(a) To assure counsel and the public that the case has received careful consideration.

(b) To help attain the objective of the law: a just result through careful formulation and application of a system of legal principle.

(c) To appeal to the intelligence of a future day, when a change in the law may be forthcoming.

(d) To warn that a holding laid down must not be pressed too far; i.e., that it is dangerous if given a wider application.

The "bad acts rule" causes great consternation in its application. Scholars might well read our opinions on this subject, years hence, and advance that we have been inconsistent in its application, to include this writer. Back to Honest Abe for a moment. On his application of principles to specific plans for reconstructing the Southern States, after hostilities ceased in the Civil War, he concluded in his last public address:

No exclusive and inflexible plan can safely be prescribed as to details and collaterals. Such exclusive and inflexible plan would surely become a new entanglement. [2]

Thus, to follow his reasoning, there are certain principles, which must stand fast as principles, but nevertheless must have certain flexibility, in effect, to sustain themselves. By analogy, the admissibility of

---

1. R. McGinnis, Quotations of Abraham Lincoln, ch. Logical Thinking, at page 23 (Nelson–Hall Publications 1977); Library of Congress.

2. R. McGinnis, Quotations of Abraham Lincoln, ch. Ethics, at page 9 (Nelson–Hall Publications 1977); Library of Congress.

other acts testimony as governed by SDCL 19–12–5, cannot sustain itself unless it has some flexibility. When one reads the first sentence of this evidentiary rule, it appears to be inflexible; when the last sentence thereof was written, the rule takes on flexibility. I daresay that the constitutional right to a fair jury trial is inflexible. In said address, he also declared: "Important principles may, and must be inflexible."[3] Attach therefore to the right of a fair jury trial, I surmise, the inflexibility thereof, but consider the last sentence of this statute to give it some degree of flexibility so as to sustain its intent. Having said this relative to the preservation of statutory strength and the vitality of the rule,[4] hereby I wish to assure counsel and the public that this case has received careful consideration; furthermore, that I believe a just result is achieved through the majority opinion, i.e., Pastor Werner be punished for his wrongdoing and the jury's verdict was formulated by the application of a system based upon legal principle.

Pastor Werner's conduct is reflected by a chart, which is supported by the evidence, and is attached hereto, and by this reference, made a part hereof. These sexually abusive acts were perpetrated upon these young girls who trusted him, as did their families. With the exception of two years, these acts of abuse were perpetrated from 1962 to 1990. There were no provable sexual offenses for the years, 1983 and 1986. It is apparent that he isolated maturing young girls, sexually contacted female genitalia or breasts, used his religious position to abuse these young victims, and inflicted, in nearly each scenario, identical acts. These are what could be described as "touchy-feely" acts; testimony reflects that he was known to be a person who commonly touched people, patted them, and placed his hands on people. Therefore, Pastor Werner could easily advance that his "touchings" were really not sexually abusive acts, but were acts in friendship, love or admiration. It is vital to consider that SDCL 22–22–7.1 reflects that a "touching" must be with an intent to arouse or gratify the sexual desire of either party. Therefore, considering these numerous sexual contacts, over a number of years, it can be reasonably argued, were not accidental "touchings" nor can it be argued that these acts were just "mistakes." These numerous "touchings" are not lost in time: They were continuous acts of sexual exploitation of young girls, where he had the *opportunity,* and were all a part of a *common scheme* or *plan* to arouse and gratify his sexual desire. This conduct was not harmless play, nor mistakes, nor accidents; it was wrong and Pastor Werner knew it was wrong. These young girls were in his presence by virtue of the trust of the parents in his congregation. These parents, and their offspring, had an expectation of safety within their own church. It was not there.

Mr. Chief Justice has seen fit to quote one of my special writings in *Titus.* Said writing, nearly four years ago, depicts that which I still believe in, namely that "each case depends upon its own particular facts as to a limitation, *regarding vintage, on the remoteness.* Admission of prior acts must realistically depend upon their nature." *Titus,* at 582, emphasis supplied mine. In *Klein,* seeking the spirit of the rule, and a certain flexibility, at 20, I expressed:

> These "prior crimes, wrongs, or bad acts" cases, i.e., admitting prior crimes or wrongs or bad acts to prove the crime at hand, must be distinguished and decided on each set of facts. Admitting evidence of prior crimes, wrongs or bad acts is a matter of judicial discretion. It is not a matter, in every case, of automatic inclusion or automatic exclusion.

For consistent writings of this special writer, I refer to *State v. Willis,* 370 N.W.2d 193 (S.D.1985) (isolating retarded women to take advantage of them); *see also, State v.*

---

**3.** *Id.* at 9.

**4.** In *Matter of Silver King Mines, Permit EX–5,* 315 N.W.2d 689, 691 (S.D.1982) we expressed the following proposition: "It is a fundamental rule of statutory construction that all provisions within a statute must be given effect, if possible." (Citing *State v. Heisinger,* 252 N.W.2d 899 (S.D.1977).

*Bradley,* 431 N.W.2d 317 (S.D.1988) (physically abusing women establishing a pattern leading to murder); *see also, State v. Perkins,* 444 N.W.2d 34 (S.D.1989) (pedophilia). In summation, this case turns on the trial court's admission of evidence. Our scope of review is the abuse of discretion test. In my opinion, Judge Timm did not abuse his discretion. *State v. Sieler,* 397 N.W.2d 89 (S.D.1986) and *State v. Rose,* 324 N.W.2d 894 (S.D.1982).

## Sexually Abusive Acts Committed Against Victims By Appellant Admitted to Prove Opportunity, Common Scheme or Plan, Absence of Mistake or Accident

| Victim *Other Acts Victims | Age At Initial Contact | Parishoner At Defendant's Church | Sexual Contact–Body Parts Involved | Occurred While Attending A Church Activity | Occurred More Than Once | Occurred In A Public Setting |
|---|---|---|---|---|---|---|
| C.H. | 14 | X | Breasts | X | | X |
| K.H. | 10 | X | Breasts | X | X | X |
| T.Z. | 8 | X | Breasts | X | X | X |
| T.Z. | 13 | X | Attempt–Breasts | X | X | X |
| D.H. | 13 | X | Buttocks | X | | X |
| * B.D. | 12 | X | Vagina/ Breasts | X | X | X |
| * S.S. | 13 | X | Breasts | X | X | X |
| * J.B. | 16 | X | Breasts | X | X | X |
| * P.N. | 14 | X | Breasts | | X | |
| * J.S. | 14 | X | Vagina | | | |
| * S.A. | 13 | X | Breasts | X | X | X |
| * K.T. | 14 | X | Breasts | X | X | X |
| * S.B. | 13 | X | Breasts | X | X | X |
| * K.S. | 13 | X | Breasts | X | X | X |
| * K.J. | 13 | X | Breasts | X | | X |
| * E.K. | 13 | X | Breasts | X | X | X |

AMUNDSON, Justice (concurring in part and dissenting in part).

This is not your typical sexual abuse case wherein the credibility of one victim and credibility of the defendant are the critical issues to be resolved by the jury. In this case, the defendant was charged with seven counts of sexual contact with a child under sixteen years of age and two counts of attempted sexual contact with a child

under sixteen years of age. These counts covered conduct alleged to have occurred over a period of time beginning in October, 1987, and ending in March, 1990. There were five different victims named in the charges filed who all testified regarding the alleged incidents.

In other words, State had incorporated into the charge evidence of other bad acts allegedly committed by this defendant against the other four victims, which could be used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, under SDCL 19–12–5. The record does not reflect any objection being filed by defendant to exclude any testimony by the victims under the first part of the above-mentioned statute.

There has been a profusion of decisions written in numerous jurisdictions on the subject of prior bad acts. This court has dealt with this issue in a multitude of cases and continues to have appeals filed on a regular basis where this issue again is the focal point. In our recent decision of *State v. Chapin*, 460 N.W.2d 420 (S.D.1990), we again confirmed that the rule contained in SDCL 19–12–5 is one of inadmissibility and that the exceptions contained therein should not be allowed to totally absorb this premise. The purpose behind this rule is that a defendant should not be convicted on evidence of mere propensity to act in a particular manner.

> The general exclusion of evidence of other crimes or wrongs in criminal prosecutions rests on sound policy and constitutional concerns. Introduction of evidence that the defendant committed other crimes and unwholesome acts may lead jurors to return a verdict of guilty for reasons other than finding all the elements of the alleged crime beyond a reasonable doubt. Although reasonable doubt of guilt exists on this occasion, the jury might conclude the defendant is a "bad man," who deserves punishment regardless of his innocence of the crime charged and warrants imprisonment to prevent future maleficent acts. Such results defeat the letter and policy of substantive criminal law mandating conviction based upon a non-vague concrete statute; instead, jurors have found the defendant guilty based upon past unsavory acts without necessarily violating any criminal statute in the process. Alternatively, and just as improperly upon learning that the accused committed other crimes or wrongs, jurors might infer that the defendant has a propensity to commit crimes and probably committed this crime as charged.

Patterson, *Evidence of Prior Bad Acts: Admissibility Under the Federal Rules*, 38 Baylor L.Rev. 331, 332–33 (1986).

In *Chapin*, we advised that the proper procedure to be followed when requesting the allowance of bad acts evidence is to identify the specific exception providing for admission, and establish why the evidence is relevant to an issue or ultimate fact in dispute in the case.

In *United States v. Mothershed*, 859 F.2d 585 (8th Cir.1988), the Eighth Circuit Court of Appeals reversed a conviction based in part upon the use of a ten-year-old conviction and held as follows:

> We have not been aided in our review of the relevancy issue in this case by the 'laundry list' approach taken at trial. Rather than name the particular issue on which this conviction was relevant, it appears that the government simply read the list of issues for which prior bad acts can be admitted under Rule 404(b) [SDCL 19–12–5]. This is not in itself a basis for reversal, but it is a practice we discourage. 'Rather than making a broad reference which merely restates the components of the rule, the district court should specify which components of the rule form the basis of its ruling and why.' *United States v. Harvey*, 845 F.2d 760, 762 (8th Circuit 1988). We expect the same from the proponent of the evidence.

*Mothershed*, 859 F.2d at 589. Submission of this type of evidence is critical for an appropriate and informed review of such an issue on appeal. If not specified, it is difficult for a reviewing court to determine the relevancy to the material issue in dispute

for which it is tendered as proof. A simplistic approach to the admission of bad acts evidence is warned against in 22 C. Wright & K. Graham, Federal Practice and Procedure:

> Particularly to be deplored is what might be called the 'smorgasbord' approach to analysis of other crimes evidence in which the court simply serves up a long list of permissible uses without any attempt to show how any of them are applicable to the case at hand. ... What is to be avoided is the mere listing of possible uses in the hope that at least one will seem to the reader to be applicable to the facts of the instant case.

Section 5240 at 479 (1978). The record in this case reflects a laundry list requesting admission of the plethora of bad acts evidence with little rationale for why it is applicable or needed in the case. This court has to guard against the smuggling of bad acts evidence into the record to show mere propensity to the jury, no matter how it is labeled by the prosecution. In the instant case, the prosecution jumped out of the starting gate with this bad acts evidence and obviously led wire-to-wire in this prosecution based on the verdict.

There is no question that the trial court concluded that the testimony of this legion of witnesses would be relevant to prove opportunity, common scheme or plan, motive, intent and absence of mistake or accident in this case. Notwithstanding this conclusion, I find the record lacking as to the need for this evidence on these issues, even if they are contested elements to be proven by the State in this case, which is certainly questionable in this writer's mind. As previously stated, the prosecution had five witnesses to present in its case-in-chief, but chose to place this defendant in a position where he had to defend against numerous other incidents covering twenty-plus years.

In *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741, 752 (1990), Justice Shanahan stated as follows in his dissent:

> 'There is no presumption that such other-crimes evidence is relevant.... Otherwise, of course, the accused might be

convicted because of his participation in the other crimes rather than because he is guilty beyond a reasonable doubt of the crime alleged.' *United States v. Manafzadeh*, 592 F.2d 81, 86 (2nd Cir.1979). See, also, *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir.1985):

> '[T]he defendant must be tried for what he did, not for who he is. Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that defendant has engaged in other acts of wrongdoing.'

All the other acts of wrongdoing which State was allowed to use in this case were to show that defendant was a bad person and had been a bad person for a long time. The admission of this evidence allowed the defendant to be judged on the basis of innuendo from conduct for which he was not on trial for, nor charged with.

This decision could easily be the final gulp in the total swallowing of this rule by its exceptions. In order to avoid such a result, I would reverse and remand for a new trial.

Although I dissent on Issue I, I concur with the majority on Issue II.

SABERS, Justice (dissenting).

The prosecution of this defendant was entirely dependent upon violating almost every rule of fair play in respect to prior bad acts. If we fail to send this case back for a fair trial, the futility and expense of attempting to educate Judicial personnel on "prior bad acts" through our "Judicial Conferences" will be a joke. The State was permitted to put the "bad before the good" to such an extent that the first five witnesses were all prior bad act witnesses. The trial probably doubled in length to 5 days simply because of testimony on uncharged acts. Justice was nowhere to be found.

This same issue arose recently in Florida in the William Kennedy Smith rape trial. Although three instances of alleged prior bad acts with other victims were tried *in* the press, they were excluded *from* the trial. But not in South Dakota. Here, our liberal and almost automatic admission of prior bad acts makes them the focal point of the trial. Justice is nowhere to be found.

The danger of unfair prejudice so substantially outweighs the probative value of these prior bad acts that the defendant was denied the fair trial guaranteed by the United States and South Dakota Constitutions. Attempting to assess the impact of these prior bad acts on the jury is like speculating on the damage a bull might do in a china shop. The prior bad acts testimony in this case painted the defendant not only as a bad man but also as an evil and conniving man. Once a juror has heard such testimony, the defendant loses any chance of receiving a fair trial. "[T]here is no way that a criminal defendant can have a fair trial after this kind of evidence is admitted." J. Larson, South Dakota Evidence § 404.2[1], p. 154 (1991) (citing other authorities).

A defendant should be tried on the evidence of the crime charged, not on the evidence of all of the other uncharged acts in his life.

> A man should not be convicted because he is a 'bad man'; or, that previously he acted as a 'bad man' in a given factual situation for, if convictions were secured in such fashion, the principle that a man may be punished only for those acts with which he was charged, would be violated.

*State v. Chief Eagle*, 377 N.W.2d 141, 147–8 (S.D.1985) (Henderson, J., dissenting). *See also, State v. Perkins*, 444 N.W.2d 34, 41 (S.D.1989) (Sabers, J. dissenting); and *Wedemann*, 339 N.W.2d at 116–117 (Henderson, J. dissenting).

For the state's attorney to offer, the trial court to admit and the majority to affirm defendant's conviction based on most of the exceptions in SDCL 19–12–5 is error. To admit testimony of these prior bad acts based on the pretext of showing "motive, opportunity, intent, common scheme or plan" simply denies fair trials. In reality, none of these exceptions were material to the issue in this case. Defendant's defense was simply that he did not commit the acts charged. Motive was not a material issue. In fact, in this sex molestation case, motive is obvious, not material. No material issue existed as to "opportunity, common scheme or plan" either. The same is true of intent. *See Champagne*, 422 N.W.2d at 845–846 (Sabers, J., dissenting). The exceptions continue to swallow the rule. *Id.*

The South Dakota Legislature could, within constitutional limits, make all prior bad acts admissible in sex molestation cases. It could do so simply by enacting a law which states that all such evidence is admissible without regard to relevancy, materiality and prejudice. However, until the legislature does so, we should enforce the law and require the prosecutor to prove relevancy, materiality and that the prejudicial effect of such evidence does not substantially outweigh its probative value. *Id.*

Additionally, the majority's ruling completely fails to account for the relevant ten year time limit in SDCL 19–14–13.* As indicated in the majority opinion, these uncharged prior bad acts occurred up to twenty-eight years prior to the time of this trial. In effect, their admission creates a double standard in South Dakota criminal law. One rule for the state, another rule for the defense. In *State v. Caylor*, 434 N.W.2d 582, 584 (S.D.1989), this court held under SDCL 19–14–13 that a "15 year old conviction [was] stale and inadmissible as a matter of law" and could not be used to impeach a state's witness. Here, we are not even dealing with a conviction. We are

---

* SDCL 19–14–13 (609(b)) states in part:

Evidence of a conviction under § 19–14–12 is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect[.]

dealing with prior uncharged acts which simply tended to show that the defendant was a bad man. Therefore, these uncharged prior bad acts were *too* prejudicial and *too* remote and prevented the defendant from receiving a fair trial. *See State v. Rufener,* 392 N.W.2d 424, 434 (S.D.1986) (Sabers, J. dissenting).

If we fail to send this case back for a fair trial, our message to prosecutors is clear—open season stays open forever, keep winking at the rules.

We should reverse and remand for a fair trial.

