STATE of South Dakota, Plaintiff
and Appellee,

v.

Michael McGILL, Defendant
and Appellant.

No. 18802.

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 1995.

Decided Aug. 16, 1995.

Mark Barnett, Atty. Gen., Frank E. Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Gary D. Blue of Blue and Haeder, Huron, for defendant and appellant.

AMUNDSON, Justice.

Michael McGill (McGill) appeals his conviction for stalking in violation of SDCL 22–19A–1. We affirm.

## FACTS

McGill introduced himself to Lisa W. (Victim) in 1978. He soon developed romantic feelings for her, stating that she "appealed to me more than anybody at that point." Victim did not reciprocate these feelings, nor did she encourage any relationship.

Almost immediately after the two met, McGill started calling Victim's parents' home trying to contact her. She did not live with her parents and her phone number was unlisted. Unable to talk to her personally, McGill professed his love for Victim to her parents and proclaimed that he would make a good husband. He became obsessed with this fantasy. When Victim's parents hung up on McGill, he would immediately call back. If they refused to answer the phone, he would let it ring. The phone calls occurred at all times—day and night.

McGill's telephone calls became more frequent when Victim moved back in with her parents in September, 1979. Victim tried to stop McGill's behavior by hanging up on him and demanding that he stop calling. McGill's behavior persisted.

Victim again moved out on her own in June of 1980, and requested an unlisted telephone number. To overcome this obstacle, McGill started sending her love letters. Victim became frightened from the tone of the letters. McGill wrote that he was going to kidnap her and kill her fiancé. In addition, McGill came to Victim's workplace in order to talk to her. When co-workers told him that he could not see Victim, McGill became aggressive and the police had to remove him from the premises.

On December 20, 1985, Victim was married. McGill was bitter about the marriage. He testified that he felt he was "losing a leg or an arm and it was a terrible, terrible situation." On May 16, 1988, Victim received another letter from McGill, threatening to kill her husband. Victim testified that subsequent letters recanted these threats and reasserted his love. On May 30, 1989, McGill sent yet another letter, stating "I'm not in love with you, I am obsessed by you."

Victim also testified that she observed McGill on many occasions driving past her home and the daycare center where she took her children. On July 12, 1993, Victim received three letters from McGill confirming her suspicions. McGill wrote that he had followed her children and, in fact, was "spying" on them during a visit with their out-of-town grandparents. He also related that he had killed a cop and spent time in jail.

Frightened for her children's safety, Victim, on the same day as she received these three letters, requested the court to restrain McGill from any contact with her or her family. Although the trial court issued the order, McGill ignored it. He continued to telephone and drive by Victim's house.

A complaint was filed on July 14, 1993, charging McGill with stalking under SDCL 22–19A–1, which had been enacted during the 1993 legislative session and became law on July 1, 1993. The charge was comprised of three letters received by Victim on July 12, 1993. On February 11, 1994, the State filed a motion requesting the introduction of other acts evidence. These acts occurred prior to July 1, 1993. At a pretrial motions hearing, the trial court held that the evidence was admissible to show a course of conduct relating to the time period charged.

On April 28, 1994, the jury convicted McGill of stalking. He was sentenced to a one-year confinement at the Regional Correction Center in Huron.[1] The trial court further provided that a portion of the sentence would be suspended if McGill attended alcohol and psychological treatment. The trial court entered a judgment of conviction on May 26, 1994. McGill appeals.

## ISSUES

I. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN ADMITTING EVIDENCE OF MCGILL'S CONDUCT PRIOR TO THE EFFECTIVE DATE OF THE STALKING STATUTE?

II. WHETHER THE TRIAL COURT ERRED IN DENYING MCGILL'S MOTION FOR ACQUITTAL ON THE CHARGE OF STALKING?

III. WHETHER MCGILL WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL?

IV. WHETHER PLAIN ERROR WAS COMMITTED?

V. WHETHER THE LANGUAGE OF SDCL 22–19A–1 IS SO VAGUE AS TO BE UNCONSTITUTIONAL?

## STANDARD OF REVIEW

The admission of other acts evidence is governed by an abuse of discretion standard. *State v. Iron Necklace,* 430 N.W.2d 66, 80 (S.D.1988) (citing *State v. Dokken,* 385 N.W.2d 493 (S.D.1986)). A trial court has the authority to admit evidence of other crimes, wrongs, or acts, so long as the evidence is relevant, and its probative value substantially outweighs its prejudicial effect. *State v. Thomas,* 381 N.W.2d 232, 235 (S.D. 1986). The delicate balancing between probative versus prejudicial value is within the sound discretion of the trial court. *Id.* at 235.

Our standard of review of a denial of a motion for judgment of acquittal is whether State set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged. *State v. Abdo,* 518 N.W.2d 223, 227 (S.D. 1994); *State v. Gallipo,* 460 N.W.2d 739, 742

---

1. Under SDCL 22–19A–1, the legislature established the crime of stalking as a Class 1 misdemeanor.

(S.D.1990). In determining the sufficiency of the evidence to constitute the crime, the question is "whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt; in making this determination, the court will accept the evidence, and the most favorable inference fairly drawn therefrom, which will support the verdict." *State v. Heftel,* 513 N.W.2d 397, 399 (S.D.1994) (citations omitted).

## DECISION

*I. Admission of "Other Acts" Evidence.*

■ The general rule is that "other acts" evidence is not admissible to prove that a defendant acted in conformity with his past conduct. *State v. Steele,* 510 N.W.2d 661, 667 (S.D.1994) (citing *State v. Chapin,* 460 N.W.2d 420, 421 (S.D.1990)). The admission of other acts testimony is governed by SDCL 19–12–5, which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under SDCL 19–12–5, admissibility of other acts evidence is determined by a two-step process:

> 1) Whether the intended purpose for offering the other acts evidence is relevant to some material issue in the case, and
> 2) Whether the probative value of the evidence substantially is outweighed by its prejudicial effect?

*Steele,* 510 N.W.2d at 667.

Although McGill's conduct under South Dakota law did not constitute criminal stalking prior to July 1, 1993, the trial court admitted it to prove a "course of conduct" for McGill's subsequent illegal acts. In *State v. Werner,* 482 N.W.2d 286, 289 (S.D.1992), this court held that the list of exceptions in SDCL 19–12–5, for which other acts evidence is properly admissible, is not exhaustive. The statutory language, "such as," indicates that "other acts" evidence may be admissible

for purposes not specifically stated in the statute. *Id.* Besides a course of conduct, the trial court alternatively admitted the evidence to show proof of intent and absence of mistake.

South Dakota's stalking law, SDCL 22–19A–1, provides in part:

> Any person who willfully, maliciously, and repeatedly follows or harasses another person or who makes a credible threat to another person with the intent to place that person in reasonable fear of death or great bodily injury is guilty of the crime of stalking.

SDCL 22–19A–4 provides:

> For the purposes of this chapter 'harasses' means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose.

"Course of conduct" is defined in SDCL 22–19A–5 as:

> A pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.'

In reviewing the admissibility of this type of evidence, we consider its relevancy, probative value and prejudicial effect.

*A. Relevance.*

■ This court has previously stated that " '[a]ny fact that tends to connect an accused with the commission of a crime is relevant and has probative value.' " *State v. Goodroad,* 442 N.W.2d 246, 250 (S.D.1989) (quoting *State v. Sieler,* 397 N.W.2d 89, 92 (S.D. 1986)); *State v. Iron Shell,* 336 N.W.2d 372, 374 (S.D.1983). The Pennsylvania Superior Court in *Commonwealth v. Urrutia,* 439 Pa.Super. 227, 235, 653 A.2d 706, 710 (1995), stated that a "course of conduct by its very nature requires a showing of a repetitive pattern of behavior." The court held "where evidence of prior bad acts is necessary to establish the pattern, the evidence is admissible." *Id.; see also People v. Payton,* 161 Misc.2d 170, 175–77, 612 N.Y.S.2d 815, 819

(1994) (holding uncharged incidents were facially sufficient to support a course of conduct for one count of menacing (stalking)). Here, the trial court found McGill's prior actions relevant for the purpose of showing a course of conduct, which was a contested issue in the case.

### B. Probative Value Versus Prejudice.

■ This step to admissibility requires the trial court to weigh the probative value of McGill's prior acts with any undue prejudicial effect. SDCL 19–12–3, South Dakota's version of the Federal Rule of Evidence 403, provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]

This court has held: "Other acts evidence has a prejudicial effect if it has the capacity to persuade by illegitimate means which results in the state's having an unfair advantage. Such evidence is not prejudicial merely because its legitimate probative force damages the defendant's case." *Goodroad*, 442 N.W.2d at 250 (citing *State v. Lowther*, 434 N.W.2d 747, 753 (S.D.1989); *State v. Kerkhove*, 423 N.W.2d 160, 163 (S.D.1988)).

■ Besides undue prejudice, McGill argues that admitting this evidence was an *ex post facto* violation of his rights under the United States and South Dakota Constitutions. We find this claim to be completely without merit. In a recent case, *Cal. Dept. of Corrections v. Morales*, — U.S. ——, ——, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588, 594 (1995), the United States Supreme Court held that the *ex post facto* clause is aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Id.* (citations omitted.) In this case, we are considering the admissibility of other acts evidence, not the "retroactive alteration of a defined crime or an increase in punishment." *Id.*

---

**2.** In fact, the trial court instructed the jury that it could only consider McGill's other acts for the limited purpose of whether he engaged in a course of conduct. Instruction number 15 provided, in pertinent part:

> You have heard evidence of acts which occurred prior to the time period alleged in the

In *Delano v. Petteys*, 520 N.W.2d 606, 608 (S.D.1994), this court stated:

> The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed ... [O]ur decisions prescribe that two critical elements must be present for a criminal or penal law to be *ex post facto*; it must be retrospective, that is it must apply to events occurring [before] its enactment, and it must disadvantage the offender affected by it. (Citations omitted.)

McGill's pre-July 1, 1993, acts were not charged or punished. The sole issue is whether they were admissible to provide the jury with evidence to determine McGill's intent and course of conduct which led to the letters Victim received on July 12, 1993.

A review of the record shows the trial court weighed, as required, the probative value of McGill's prior acts against its prejudicial effect. It held that testimony regarding McGill's telephone calls, letters and physical tracking of Victim and her family before July 1, 1993, was not unduly prejudicial, yet relevant to establish McGill's course of conduct and intent.[2] We hold that the trial court did not abuse its discretion in admitting this other acts evidence, nor was the admissibility of evidence a violation of the *ex post facto* clause.

### II. Denial of Motion for Acquittal.

McGill also argues the trial court erred in denying his motion for acquittal. In *Abdo*, this court held that a motion for acquittal is properly denied if there exists enough evidence to reasonably support a jury's finding of guilt. *Id.*, 518 N.W.2d at 227 (citing *State v. Lykken*, 484 N.W.2d 869, 875 (S.D.1992)); *see Heftel*, 513 N.W.2d at 400. McGill claims

> information. Although such evidence is allowed, you may consider it only as to whether the defendant engaged in a course of conduct. You may not use this evidence to decide whether the defendant carried out the physical acts involved in the time period alleged in the information. . . . .

there was insufficient evidence to support the jury's verdict that he had violated SDCL 22–19A–1. Specifically, he argues that the statutory elements of "malicious intent" and "repeated actions" were not satisfied.

"Malicious" is defined as "having, or done with, wicked, evil or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse or as a result of ill will." Black's Law Dictionary, 958 (1990). "Repeated" is defined as "said, done or presented again." Webster's New Collegiate Dictionary, 980 (1974); *State v. Diede*, 319 N.W.2d 818, 821 (S.D.1982).

■ There is well-established precedent that indicates the State may prove all elements of the crime, including intent, by circumstantial evidence. *State v. Davi*, 504 N.W.2d 844, 856–57 (S.D.1993); *State v. Ashker*, 412 N.W.2d 97, 105 (S.D.1987). The actor's "state of mind" at the time of the offense may also be determined from his acts, conduct and inferences which are fairly deducible from the circumstances surrounding the offense." *State v. Huber*, 356 N.W.2d 468, 473 (S.D.1984); *see also Payton*, 612 N.Y.S.2d at 818 (holding that the defendant's conduct toward victim in its entirety should be considered in assessing "course of conduct" and "intent").

The trial court found McGill's conduct toward Victim "about as blatant a case of stalking as you can get." McGill admitted his obsession for Victim. He called her incessantly, wrote letters to her and when her feelings did not mirror his own, threatened her and her family. He came to her workplace and had to be removed by police. He followed Victim and her children.

■ Given the facts, we cannot say there was insufficient evidence for the jury to find McGill guilty of stalking. Victim received the three letters on the same day. Those letters, although different in tenor, showed McGill's "repeated" conduct evidencing his harassment of Victim. The jury had more than enough evidence to return a guilty verdict. The trial court properly denied McGill's motion for acquittal.

### III. Ineffective Assistance of Counsel.

■ McGill further argues ineffective assistance of counsel at trial under both federal and state constitutions. This court has consistently held that ineffective assistance of counsel claims will not be considered on direct appeal. *State v. Petersen*, 515 N.W.2d 687, 688 (S.D.1994); *State v. Sonen*, 492 N.W.2d 303, 304 (S.D.1992); *State v. Wurtz*, 436 N.W.2d 839, 842 (S.D.1989). However, an exception exists where the defense at trial was so ineffective and counsel's representation " 'so casual' as to represent a 'manifest usurpation' of [the defendant's] constitutional rights." *State v. White Mountain*, 477 N.W.2d 36, 39 (S.D.1991) (citing *State v. Jett*, 474 N.W.2d 741, 742–43 (S.D.1991)). The facts of this record do not fall within the above exception. Therefore, the issue will be considered at a later date.

### IV. Plain Error.

■ McGill argues this court should apply the plain error doctrine in the event we do not find inadequate assistance of counsel. SDCL 23A–44–15 provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." *Mitchell v. Class*, 524 N.W.2d 860, 865 (S.D.1994). Our precedent holds that we only find plain error in exceptional cases, where error is obvious and substantial. *State v. Moriarty*, 501 N.W.2d 352, 359 (S.D.1993) (citations omitted). Although McGill cites authority on the doctrine, he does not present any argument showing obvious and substantial error in this record, nor do we find any. Therefore, plain error will not be applied in this case.

### V. Constitutionality of SDCL 22–19A–1.

■ McGill argues that SDCL 22–19A–1 is unconstitutionally vague. In addressing this issue, there exists a presumption that the statute is constitutional. *Poppen v. Walker*, 520 N.W.2d 238, 241 (S.D. 1994); *State v. Big Head*, 363 N.W.2d 556, 559 (S.D.1985). McGill has the burden to refute this presumption beyond a reasonable doubt. *State v. Heinrich*, 449 N.W.2d 25, 27 (S.D.1989); *State v. Neville*, 346 N.W.2d 425, 428 (S.D.1984).

McGill cites *State v. Blakey*, 399 N.W.2d 317 (S.D.1987), to support his proposition. *Blakey* held a statute void for vagueness when "the forbidden conduct is so poorly defined 'that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application[.]' " *Id.* at 318 (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). McGill claims the words "willful," "maliciously," "repeatedly," "follows" and "harass" are impermissibly vague.

■ The vagueness of a statute has been considered on several previous occasions. Statutory language cannot be so vague that selective or discriminatory enforcement is permitted. *State v. Dale*, 439 N.W.2d 98, 106 (S.D.1989) (citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983)). In *Dale*, this court held:

> A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. A criminal statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.

*Dale*, 439 N.W.2d at 106; *see State v. Big Head*, 363 N.W.2d 556, 559 (S.D.1985).

■ The language of statutes needs to be fair and reasonably certain. *State v. Hoffman*, 430 N.W.2d 910, 912 (S.D.1988).

> It is realized that criminal laws represent a legislative balancing act in many instances. In an attempt to prohibit certain conduct, the laws are usually written in a fashion to give broad application to the type of conduct sought to be forbidden. There is nothing inherently wrong with a broad application; for otherwise, there would exist a criminal law for each specific act. What is not allowed are laws so general in nature that people of ordinary intelligence may apply them differently.

*Dale*, 439 N.W.2d at 106.

Upholding the constitutionality of Florida's stalking statute, the Florida Supreme Court stated: "In determining the sufficiency of the notice, a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *Pallas v. State*, 636 So.2d 1358, 1360 (Fla.App.Ct.1994), *approved* 654 So.2d 127 (Fla.1995) (holding Florida's stalking statute not void for vagueness where a "reasonable person" would have fair notice the conduct described was prohibited); *see also State v. Culmo*, 43 Conn.Supp. 46, 70–72, 642 A.2d 90, 102 (1993) (constitutionality of Connecticut's stalking statute upheld because the statute was "narrowly tailored to serve significant government interests ... while leaving open ample alternative channels of communication").

Similarly, in *People v. Heilman*, 25 Cal. App.4th 391, 400, 30 Cal.Rptr.2d 422, 427 (1994), the California Court of Appeals stated: "The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." *Id.* (citation omitted).

> 'Repeatedly' is a word of such common understanding that its meaning is not vague. It simply means the perpetrator must follow the victim more than one time. There is nothing mysterious or ambiguous about the term 'repeatedly' to lead an actor to reasonably believe he will not be subject to the penalty under the statute if he engages in willful, malicious following on more than one occasion. *Id.*

> 'Repeatedly' as used in this statute is not so vague as to create the danger of arbitrary and discriminatory enforcement of the law. (Citations omitted.) In fact, 'repeatedly' adds to the restraint police officers must exercise. Not until a perpetrator follows a victim more than once does the conduct rise to a criminal level. In addition, the statute provides several other restraints on arbitrary and discriminatory enforcement. [T]he perpetrator must be found to have followed or harassed the victim within the meaning of the statute. *Id.*

The court concluded that a reasonable person's common sense would understand that the term "repeatedly," when read in light of the entire statute, was not unconstitutionally

vague. *Id.* at 428; *see also Johnson v. State* 648 N.E.2d 666, 670 (Ind.App. 1 Dist.1995).

█ In his brief, McGill limits his argument to whether the terms "maliciously" and "repeatedly" are unconstitutionally vague. Aside from a limited discussion on the meaning of "repeatedly," McGill's sole argument regarding the impropriety of the word "maliciously" is a reference to the trial court's definition of that term in jury instruction number ten. These terms certainly have "adequate interpretations in common usage and understanding" and their meanings can be obtained from a common sense reading of the statute. *See Heilman,* 30 Cal.Rptr.2d at 428.

█ McGill's brief is markedly absent of any discussion pertaining to the other statutory terms which he alleges are vague. *People v. McMiller,* 202 Mich.App. 82, 82–84, 507 N.W.2d 812, 813 (1994); *State v. Myers,* 244 Neb. 905, 906–908, 510 N.W.2d 58, 62 (1994); *State v. Scherreiks,* 153 Wis.2d 510, 519–21, 451 N.W.2d 759, 763 (1989). We find McGill waives any argument regarding these terms.

Ultimately, McGill did not carry his burden in showing beyond a reasonable doubt that SDCL 22–19A–1 is unconstitutionally vague. A reasonable person can easily discern what constitutes the prohibited conduct when exercising common sense.

Affirmed.

MILLER, C.J., and SABERS, J., concur.

KONENKAMP, J., concurs in part and concurs in result.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

KONENKAMP, Justice (concurring in result on Issue I).

The majority misapplies SDCL 19–12–5 (Rule 404(b)) in holding admissible as "other acts" McGill's conduct prior to July 1, 1993. McGill's pre-enactment conduct was admitted as substantive proof of the crime charged against him, not as other acts tending to establish guilt for his post July 1, 1993 acts. The trial court specifically instructed the jury that it may consider these acts in deciding whether "the defendant engaged in a *course of conduct.*" An element of stalking is harassment. SDCL 22–19A–1. Under the stalking statutes, harass is partially defined as "a knowing and willful *course of conduct* directed at a specific person. . . ." SDCL 22–19A–4. Hence, course of conduct forms part of the corpus delicti for the crime of stalking. The trial court specifically disclaimed McGill's pre-enactment actions as other acts:

> It is certainly relevant as to the time period charged in the information and that there was a course of conduct over a period of time, and it doesn't make any difference, I don't think, as to whether that evidence was legal or illegal prior to July 1, 1993, so my ruling is, is that the State can use evidence of contacts or actions— contacts between the alleged victim and the Defendant or actions of the Defendant which tend to show any course of conduct, even though that conduct or those contacts occurred prior to July 1, 1993. That is not other bad act evidence; that is part of the res gestae of the offense.

The evidence was admissible for the reason the trial court gave, as proof of a continual criminal scheme. The fact that the scheme began before the enactment of the statute declaring such behavior a crime, does not make its application ex post facto. "It is the continuing nature of such crimes as conspiracy and federal bank fraud which saves an indictment even though it alleges a scheme which was originated before, but was executed at least in part after, the effective criminalization of the activity involved in executing the scheme." *United States v. Whitty,* 688 F.Supp. 48, 53 (D.Me.1988); *United States v. Duke,* 814 F.Supp. 29, 30 (M.D.Tenn.1993).

I concur in the remainder of the majority opinion.